OPINION. Turner, Judge: (1) With respect to the deductions claimed for compensation paid, three questions are presented: (a) Was the compensation paid to Wood a reasonable amount for the services rendered during 1941, the tax year ? (b) does the oral contract under which Pope was paid 25 per cent of the net earnings permit a deduction of the compensation paid to him? and (c) should a new issue be considered that was not joined at the time of the hearing? (a) Petitioner has the burden of proving that the compensation paid was reasonable and that the officer rendered services for which the compensation was paid. Petitioner contends that the regular and bonus salaries paid to Wood were reasonable, because the road-mixer machine was his idea, that it was developed through an experimental period when petitioner had lean years, and that it was not until the tax year, when petitioner’s income was large, that it could pay Wood what he was entitled to have from the earnings. The proof does not support petitioner’s contention. The minutes of the meeting held on December 29,1941, by the three stockholder-officers recite that the compensation allowed petitioner’s president and vice president was for services rendered by them during 1941. Petitioner has not established that Wood rendered such additional services during that year as to warrant the large increase in compensation paid him. He was engaged in many activities and petitioner’s business was only a small portion of all his businesses. It is evident that the large volume of business done in 1941 was not due to any particular advertising program or unusual activities of petitioner’s officers and employees, but primarily to the activity of the Government in constructing national defenses, which put petitioner’s “Roadmixer” in demand. It was that factor more than any other that attributed to the success of petitioner’s business. Respondent allowed a salary of $12,000 as reasonable compensation for Wood’s services. That appears to be a liberal amount under all the circumstances, and, since increased earnings by petitioner, rather than Wood’s services, appear to be the real basis for the increased compensation, we find no justification for changing respondent’s determination. (b) Petitioner’s contention that the compensation paid to Pope is reasonable is based on an oral contract between petitioner and Pope, under which he was to receive 25 per cent of the net earnings of petitioner in addition to his regular salary. While Pope was the manager of petitioner and devoted all of his time to its business, he was also a stockholder-officer. The fact that he had a contract does not relieve petitioner of the burden of proving that the services rendered by him to petitioner were sufficient to warrant the compensation paid him therefor as being reasonable. Petitioner is again confronted with the same conditions that attributed to the success of its business, that is, the Government’s activities in its national defense, and has failed to show increased or more valuable activities on the part of Pope, to any substantial degree, during the taxable year, or that his services had been unusual or greater than in previous years. Respondent has allowed a very liberal amount, $16,816, as compensation for Pope’^ services, about twice as much as had previously been paid him, and we conclude that that amount is reasonable, under all the circumstances. There are many cases in which salaries have been held to be reasonable or unreasonable for the services rendered, but, as each case has been decided on its own set of facts, those cases are not of great value as precedents. Many factors may enter into what is reasonable or unreasonable compensation. In the instant case, we have a corporation with a comparatively small amount of stock outstanding, with Wood and Pope owning all but two shares of the stock, with an unusually large amount of net earnings during the year involved, attributable in the main, not to the services rendered by Wood and Pope, but to war conditions of the year, with the minutes of petitioner reciting a resolution adopted by its directors, two of whom were Wood and Pope, in which Wood and Pope were allowed the compensation for services rendered in 1941, with such services having been little more, if any, in the taxable year over those rendered in prior years, with the compensation allowed being out of line with compensation previously paid, and finally with the compensation allowed being based primarily on not earnings of petitioner for the year. Under all the circumstances and facts, we have concluded that respondent’s determination should be upheld and that his allowance of compensation for Wood and Pope is reasonable. (c) At the hearing respondent asked leave to amend his answer in order to raise a new issue, but upon learning that, in fairness to petitioner, the hearing would have to be delayed, he chose to abandon the issue and go to trial. On brief, however, he argues the new issue. We have not given consideration to his argument on the issue he has sought to raise, for the reason that he specifically abandoned the issue at the hearing and it was so understood by the parties and by the Court. 2. The remaining issue is with respect to the proper computation of petitioner’s “unused excess profits credit carry-over.” In the deficiency notice, it is stated: In computing your excess profits tax for the year 1941 you deducted as “Excess profits credit carry-over the amount of $49,089.64” being the unused 1940 excess profits credit in the amount of $6,438.31 plus a computed amount which you explain as “Excess profits net loss $42,651.33”. It is held that $6,438.31 constitutes the “unused excess profits credit carry-over” within the meaning of Section 710 (b) (c) of the Internal Revenue Code as amended and that this amount may not be increased by the addition of a computed “excess profits net loss” of the year 1940. Petitioner seeks to take as an unused excess profits credit carryover the excess profits credit, as computed under section 714 of the Internal Revenue Code, plus an amount which it terms as “excess profits net loss,” resulting from the exclusion of gains realized from the sale of capital assets in computing its excess profits net income for 1940. The term “unused excess profits credit” is defined by the statute[1] as meaning the excess, if any, of the excess profits credit over the excess profits net income. Petitioner is entitled, therefore, to that part of the excess profits credit as a carry-over which it has not used. “Excess” credit could be a part of or all of the amount of the credit, but no more. Under section 714 petitioner was entitled in 1940 to an excess profits credit of 8 per cent of its invested capital of $80,478.71, or $6,438.31. Since it has used none of that credit, it is entitled to all of it. The determination of the respondent is correct. Decision will be entered voider Rule 50. Subsection (c) (1) of section 710, now section 710 (c) (2) of the present code, provides : "The term ‘nnused excess profits credit’ means the excess, if any, of the excess profits credit for any taxable year beginning after December 31, 1939, over the excess profits net income for such taxable year, computed on the basis of the excess profits credit applicable to such taxable year.”