## J. D. VAN HOOSER & CO. v. GLENN, Collector of Internal Revenue.

### No. 439.

District Court, W. D. Kentucky, Louisville.

Feb. 18, 1943.

Lewis C. Carroll and Raymond F. Bossmeyer, both of Louisville, Ky., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Edward First, Sp. Assts. to Atty. Gen., and Eli H. Brown, III, U. S. Atty., of Louisville, Ky., for defendant.

MILLER, District Judge.

J. D. Van Hooser & Company is a corporation organized under the laws of Delaware on June 14, 1934, with an authorized capital stock of $25,000, par value $100.00 per share. 144 shares of capital stock were issued to J. D. Van Hooser; 3 shares to Mrs. J. D. Van Hooser (wife of J. D. Van Hooser), and 3 shares to L. W. Keller, an employee of the company. The ownership of the stock continued unchanged up to and including the entire year of 1936.

On March 15, 1937, the plaintiff filed its Income and Excess Profits Tax Return for the calendar year 1936, showing a tax due of $1,185.38, which was paid in full on that day.

The said return was thereafter examined by representatives of the Bureau of Internal Revenue, and on July 7, 1939, an additional tax in the sum of $1,449.67 was assessed against the plaintiff.

On July 21, 1939, the plaintiff, by and through Yeager & White, its agent, acting under a power of attorney, entered a protest against said assessment with the Internal Revenue Agent in Charge, on the ground that $30,000 paid to J. D. Van Hooser in the year in question was a reasonable deduction for compensation, and that no

part thereof should have been disallowed; the protest was disallowed, and on January 23, 1940, notice and demand was made on this plaintiff for the above assessment, with interest, in the total sum of $1,695.28 for the said year; the plaintiff paid the above amount to Seldon R. Glenn, Collector Internal Revenue, February 5, 1940; on July 28, 1940, a claim for refund was filed by this plaintiff for the recovery of said taxes, penalties and interest. Under date of November 4, 1940, the Commissioner of Internal Revenue notified the plaintiff by registered mail that his claim for refund of $1,695.28 for the year 1936 was rejected in full.

The aforesaid assessment of additional tax resulted from the disallowance of $10,000 of the claimed compensation for the year 1936 from the plaintiff to J. D. Van Hooser of $30,000, and from the further net adjustment to income of $79.99, which is not now in dispute. The adjustments referred to are as follows:

| | |
|---|---:|
| Addition to profits on sales | $ 418.54 |
| Disallowance of depreciation | 104.06 |
| Disallowance of $10,000 of the claimed $30,000 compensation to J. D. Van Hooser | 10,000.00 |
| | 10,522.60 |
| Less deduction of non-taxable income | 442.61 |
| Net adjustment | 10,079.99 |

The gross profit on the sale of securities by the plaintiff for the year 1936, as adjusted by the Examining Agent's report, was as follows:

| | | | |
|---|---|---:|---:|
| "Sales | | | $3,005,787.08 |
| Less: | Cost of sales | | |
| | Inventory 1/1/36 | 107.886.58 | |
| | Purchases | 2,938,034.35 | |
| | | 3,045.920.93 | |
| | Inventory 12/31/36 | 101,850.76 | 2,944,070.17 |
| | Gross Profit on Sales | | $ 61,716.91" |

The net taxable income of the plaintiff for the year 1936, as disclosed on its tax return, which reported a deduction of $30,000 for compensation to J. D. Van Hooser, was $7,548.71. If the item of $10,000, which is now in dispute, is eliminated from the adjustment referred to in Paragraph 4, the net taxable income of the plaintiff for the year 1936 would be $7,628.70.

The balance sheet of the plaintiff as reflected on its books of account, as of December 31, 1935, and December 31, 1936 was as follows:

Balance Sheet

"Dec. 31, 1935:

| Assets: | Per Books |
|---|---:|
| Accts. Rec. | 6.00 |
| Inventory | 107,886.58 |
| Impr. to Leased Prop. | 2,460.00 |
| Furn. & Fixt. | 1,047.65 |
| Premium Warrants | 363.17 |
| Total Assets | 111,763.40 |

| Liabilities: | |
|---|---:|
| Notes Pay | 76,600.00 |
| Due J. D. Van Hooser | 6,500.00 |
| Cash Overdraft | 52.86 |
| Res. for Deprec. | |
| Capital Stock | 15,000.00 |
| Surplus | 13,610.54 |
| Total | 111,763.40 |

Dec. 31, 1936:

| Assets: | |
|---|---:|
| Cash | 4,580.50 |
| Accts. Rec. | 45.23 |
| Inventory | 108,795.39 |
| Furn. & Fixt. | 1,061.65 |
| Leasehold Impr. | 1,771.06 |
| Total Assets | 116,253.83 |

| Liabilities: | |
|---|---:|
| Notes Payable | 55,000.00 |
| Due J. D. Van Hooser | 19,778.74 |
| Accrued Taxes | 1,652.99 |
| Repurchase agreement | 7,000.00 |
| Deprec. Reserve | 210.23 |
| Capital Stock | 15,000.00 |
| Surplus | 17,611.87 |
| Total | 116,253.83" |

On December 19, 1936, a meeting of the Board of Directors of the plaintiff was held, at which there were present all the directors, to-wit: J. D. Van Hooser; Mrs. J. D. Van Hooser; and Wm. B. Holton.

The following is a copy of the minutes of that meeting which reflect the action then taken by the Board:

"Mr. J. D. Van Hooser called attention of the Board to the fact that the salary of President for 1936, while tentatively set at $20,000.00 had not been made a matter of record, and accordingly a motion was made by Wm. B. Holton and seconded by Jennie W. Van Hooser that salary of President J. D. Van Hooser be fixed at $20,000.00 for year 1936. The motion was duly carried.

"The President then reported to the Board that the operations of the company reflected a very favorable return to the stockholders, and that in accord with the general public feeling that he would entertain a motion regarding bonuses to the various employees of the company. Accordingly Wm. B. Holton proposed that the following bonuses be paid:

| | |
|---|---:|
| J. D. Van Hooser | $10,000.00 |
| Harry L. Russell | 150.00 |
| L. W. Keller | 100.00 |
| John B. Farra | 67.50 |

"The motion was seconded by Jennie W. Van Hooser and carried. There being no further business, the meeting was adjourned."

During the year 1936 the $30,000 referred to in the above resolution was paid by the company to J. D. Van Hooser, or any part thereof that was not paid was accrued as a liability on the books of the company, and credited thereon to his account. The company used an accrual system of accounting, and made its income and excess profits tax return likewise on that basis.

The amount of $41,150 claimed by the plaintiff as a deduction for compensation of officers on the 1936 income and excess profits tax return consisted of the following items:

| | |
|---|---:|
| J. D. Van Hooser, President | $30,000.00 |
| Wm. B. Holton, Vice-President | 8,900.00 |
| Harry L. Russell, Secretary | 2,250.00 |

J. D. Van Hooser, President of the plaintiff company, was approximately 42 years of age in 1936. His business training and experience was as follows: Beginning 1916 he was employed for about two years in the finance department of the City of Nashville, Tennessee. He then was employed by the National City Bank of New York, working for about a year in its bond department in the Chicago office, and acting for about two years as manager of its Kentucky office in Louisville, Kentucky. About June 1920 he became manager of the bond department of the Security Trust Company of Lexington, Kentucky, later became Vice President of that institution, which was one of the leading financial institutions in Eastern Kentucky. He remained with the Security Trust Company until 1934, and while with that institution he also operated, with the approval of the Trust Company, a separate company which handled financial transac-

tions which were not eligible for handling by the Trust Company. He had particular experience in public utility company transactions. His compensation from the Security Trust Company was a guaranteed minimum of $6,000 per year with a bonus depending upon the earnings of his department for the particular year in question. In every year, except one, he received more than the minimum of $6,000. The banking laws were changed in 1934 in such a way as to materially affect the business which Van Hooser was handling for the Security Trust Company, and accordingly, he resigned his position at the Trust Company and in June 1934 organized the J. D. Van Hooser and Company Corporation, the plaintiff in this action. This company took over the business which the Security Trust Company had been handling and could not continue with by reason of the change in the banking laws.

J. D. Van Hooser and Company was an investment house, engaged chiefly in the purchase and sale of securities of different types, and buying securities as a member of a buying syndicate and marketing them to the public through its own organization. The successful operation of such a company required not only training and experience, but also initiative in discovering and analyzing possible favorable transactions. Technical investigations of particular situations were often required in order to obtain necessary information upon which a decision of whether to participate or not to participate could be made. Van Hooser initiated and formulated the policies of the company, did practically all of the buying of securities purchased and from 80% to 90% of its selling of the securities so purchased. He induced Wm. B. Holton, who had had from eight to ten years' experience in a medium sized Chicago house to come to Lexington as vice president of the plaintiff company. Holton was guaranteed a minimum salary of $4,800 per year, or 25% of the net profits of the firm whichever was the larger. Holton's services were not as productive of results as had been anticipated, and his minimum salary was reduced about the middle of 1937. Holton left the employ of the company in September 1937. In addition to Van Hooser the company had only three or four employees. Van Hooser devoted his entire time to the business of the plaintiff company through the year 1936, but for the years 1937 through 1940 he handled nu-

merous financial transactions in his individual name instead of putting them in the company's business.

The following table shows the results of the plaintiff's operations and Van Hooser's individual transactions for the year indicated:

| Year | "Plaintiff's net income after 'salary' to Mr. Van Hooser and before income taxes | 'Salary' paid by plaintiff to Van Hooser | Plaintiff's gross profit from sale of securities | VanHooser's personal reported net income |
|------|------|------|------|------|
| 1928 | | | | $28,541.09 |
| 1929 | | | | 33,791.70 |
| 1930 | | | | 8,884.25 |
| 1931 | | | (loss) | 7,999.17 |
| 1932 | | | | 7,168.17 |
| 1933 | | | | 6,555.77 |
| 1934 | $ 847.33 (loss) | $ 3,000 | $ 6,434.30 | 3,751.18 |
| 1935 | 13,573.10 | 12,000 | 37,785.90 | 16,514.30 |
| 1936 | 7,628.70 | 30,000 | 61,716.91 | 32,475.40 |
| 1937 | 707.66 (loss) | 7,200 | 23,921.35 | 4,857.61 |
| 1938 | 14,319.97 | 0 | 34,397.77 | 23,460.75 |
| 1939 | 9,630.01 | 20,000 | 50,235.67 | 32,171.26 |
| 1940 | 9,359.39 | 0 | 25,620.58 | 15,995.07" |

Profits in the investment security business fluctuate widely from year to year. The year 1936 was a very successful year for the plaintiff company, but was a less than average year for the security investment business generally. The compensation of persons engaged in that business is largely dependent upon and based upon the results produced by the individual's efforts and services, it being customary in such business to give an employee a salary in the form of a monthly drawing account plus a bonus at the end of the year as finally determined. Compensation is usually on a percentage basis, being a certain percent of the profits realized on gross sales made by the particular employee. When another employee does the buying of the securities the compensation to the selling employee is about 25% in New York City and from 25% to 65% in Louisville, Kentucky. 50% of the profits on gross sales by the employee is considered reasonable compensation in many investment houses in Kentucky, and particularly so in the smaller houses of the approximate size of the plaintiff. If the employee has duties in addition to selling, such as buying the securities or supervising the office or the work of other employees, such employee would receive additional compensation to the amounts referred to above. When there is a minimum guarantee to the employee the percentage is usually less than the percentages referred to above. Van Hooser had such additional duties and was not guaranteed any minimum compensation.

In the year 1936 the plaintiff's gross profit from sales of securities was $61,716.91. Of this amount Holton's services produced about $9,400.00, and Van Hooser's services was responsible for the balance.

A net profit, after all expenses, but before income taxes, which yields a return to a company such as the plaintiff company of 25% on its capital and surplus, is considered in the industry as a very fair profit and return. With some of the small companies a 10% return is very acceptable.

The plaintiff company would have had to pay about $30,000 to another man for the services given and results achieved by Van Hooser for the plaintiff company during the year 1936. Van Hooser would have received about $30,000 compensation from another reliable investment house in the same line of business for the same results obtained by him for the plaintiff company for the year 1936. A salary of $5,000 per year plus 50% of the gross profits on closed out sales by the employee was reasonable compensation for an employee of Van Hooser's training, experience and ability in the industry generally. The total compensation for an employee in that business is

chiefly dependent upon his personal services and his ability to produce results.

Section 23 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts page 827, provides as follows:

"Sec 23. Deductions from Gross Income.'

"In computing net income there shall be allowed as deductions:

"(a) Expenses. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered * * *."

Treasury Regulations No. 94, promulgated under the Revenue Act of 1936 provide in part as follows:

"Art. 23(a)-6. Compensation for personal services. Among the ordinary and necessary expenses paid or incurred in carrying on any trade or business may be included a reasonable allowance for salaries or other compensation for personal services actually rendered. The test of deductibility in the case of compensation payments is whether they are reasonable, and are in fact payments purely for services. This test and its practical application may be further stated and illustrated as follows:

"(1) Any amount paid in the form of compensation, but not in fact as the purchase price of services, is not deductible. (a) An ostensible salary paid by a corporation may be a distribution of a dividend on stock. This is likely to occur in the case of a corporation having few shareholders, practically all of whom draw salaries. If in such a case the salaries are in excess of those ordinarily paid for similar services, and the excessive payments correspond or bear a close relationship to the stock holdings of the officers or employees, it would seem likely that the salaries are not paid wholly for services rendered, but that the excessive payments are a distribution of earnings upon the stock. * * *

"(2) · The form or method of fixing compensation is not decisive as to deductibility. While any form of contingent compensation invites scrutiny as a possible distribution or earnings of the enterprise, it does not follow that payments on a contingent basis are to be treated fundamentally on any basis different from that applying to compensation at a flat rate. Generally speaking, if contingent compensation is paid pursuant to a free bargain between the employer and the individual made before the services are rendered, not influenced by any consideration on the part of the employer other than that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid.

"(3) In any event the allowance for the compensation paid may not exceed what is reasonable under all the circumstances. It is in general just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises under like circumstances. The circumstances to be taken into consideration are those existing at the date when the contract for services was made, not those existing at the date when the contract is questioned.

"Art. 23(a)-8. Bonuses to employees. Bonuses to employees will constitute allowable deductions from gross income when such payments are made in good faith and as additional compensation for the services actually rendered by the employees, provided such payments, when added to the stipulated salaries, do not exceed a reasonable compensation for the services rendered. It is immaterial whether such bonuses are paid in cash or in kind or partly in cash and partly in kind. Donations made to employees and others, which do not have in them the element of compensation or are in excess of reasonable compensation for services, are not deductible from gross income."

The assessment of the tax by the Commissioner of Internal Revenue is prima facie valid, and the burden is on the tax payer to establish by a fair preponderance of the evidence that the assessment is not correct. Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379; L. & C. Mayers v. Commissioner, 2 Cir., 131 F.2d 309;. Germantown Trust Co. v. Lederer, 3 Cir., 263 F. 672; Wood & Ewer Co. v. Ham, D.C.N.D.Maine, 14 F.2d 995.

"Extraordinary, unusual and extravagant amounts paid by a corporation to its officers in the guise and form of com-

pensation for their services but having no substantial relation to the measure of their services and being utterly disproportioned to their value, are not in reality payment for services, and cannot be regarded as 'ordinary and necessary expenses' within the meaning of the section; and * * *, such amounts do not become part of the 'ordinary and necessary expenses' merely because the payments are made in accordance with an agreement between the corporation and its officers." Botany Worsted Mills v. United States, 278 U.S. 282, 292, 49 S.Ct. 129, 133, 73 L.Ed. 379.

A bonus either in a lump sum or being a percentage of earnings, paid to a stockholder employee of a corporation at the end of the year, in addition to a fixed salary, does not prevent the total amount paid by the corporation from being reasonable compensation for services. Wm. S. Gray & Co. v. United States, 35 F.2d 968, 68 Ct.Cl. 480, United States v. Reitmeyer, D.C.E.D.La., 11 F.2d 648.

The size of the amount received, even though large, or a material increase in the amount received in any one year over preceding years does not in itself prevent the payment from being reasonable compensation. Wm. S. Gray & Co. v. United States, 35 F.2d 968, 68 Ct.Cl. 480; Wood & Ewer Co. v. Ham, D.C.N.D.Maine, 14 F.2d 995.

There is no fixed standard or yardstick by which the question of the reasonableness of the compensation in any particular case can be measured. Each case must stand upon the facts proved in that particular case, and the conclusion or inference that is to be drawn from those facts and all the circumstances of the case as to whether the amount paid, be it salary or a share of the profits, or both, was reasonable and should be regarded as a part of the necessary and ordinary expenses of the corporation. It is a matter of common knowledge that compensation varies according to the opinion of those in control of a corporation as to the value of the services rendered, the volume of the business, and amount of net earnings. Sometimes it is affected by locality and other considerations. What may be an ordinary and necessary expense for salary in a given corporation may vary from year to year, the variance being controlled by the fluctuating conditions of business generally and of the business itself and of the management. It also varies in different corporations, and

at times in similar corporations engaged in the same business, located at the same place, and practically under the same management, it being in the end largely controlled by the human elements involved, which takes into consideration the capacity, judgment and intelligence of those who control its operations. Wm. S. Gray & Co. v. United States, 35 F.2d 968, 68 Ct.Cl. 480.

The policy of agreeing to pay a percentage of the earnings before they are earned, or even a lump sum in the nature of a bonus after they are earned, is based primarily upon sound business principles. It stimulates the activity, diligence and ambition of the employees and it enables the corporation to justly compensate its employees without beforehand incurring the obligation. Where the earnings of a corporation do not depend upon the efforts of a large number of subordinates but are largely due to the individual efforts of a few men, and the retention of these men in the employ of the corporation is necessary to its continued successful operation, the Court should be reluctant to hold that compensation based chiefly upon a percentage of net profits, even though substantial in amount, is not reasonable compensation for the personal services actually rendered. William S. Gray & Co. v. United States, 35 F.2d 968, 68 Ct.Cl. 480; S. W. Anderson Co. v. Glenn, D.C.W.D.Ky., 43 F. Supp. 334.

Tested by the foregoing rules, the Court is of the opinion that the $30,000 paid by the plaintiff company to its President Van Hooser for his services during the year 1936 was a reasonable allowance for his personal services actually rendered in that year. It complies with the rule established by uncontradicted testimony in this case that compensation equal to 50% of the gross profits on sales made by the particular employee is reasonable where the employee's duties are exclusively in selling and that an additional amount should be paid for additional duties. In this case, the additional duties assumed by Van Hooser, namely, the purchase of the securities and management and supervision of the company's activities, were probably just as important as his selling activities. The net income to the plaintiff in 1936 in the amount of $7,628.70 more than complies with the rule, also established by uncontradicted testimony in this case that the net return to such a company should be from 10% to 25% on invested capital, which in

this case was approximately $30,000. The plaintiff company was for all practical purposes a one man company; it either flourished or died according to the energy, ability and results produced by its president Van Hooser. The very successful year which it had in 1936 was due almost entirely to his management and to his ability to produce results. In addition to the testimony of Van Hooser himself, the plaintiff offered two witnesses, both long engaged in the security business in Louisville, Kentucky, and of excellent standing and reputation, who testified that the plaintiff company would have had to pay approximately $30,000 for the services of a president who would have produced the same results for it as were produced by Van Hooser, and that Van Hooser would have been able to have received compensation of approximately $30,000 from another reliable company in the same type of business for the same results which he did obtain for the plaintiff company. The Government permitted this evidence to go uncontradicted. Certainly if the opinion of these two witnesses did not reflect the consensus of practical experienced men in the same line of business in this community, the Government would have had no difficulty in offering testimony to the contrary. In fact, the Government offered no witness of its own in the trial of the action. The uncontradicted evidence above referred to appears decisive of the issue in this case.

The plaintiff is entitled to judgment for its excess payment with interest caused by the Commissioner's disallowance of $10,-000 of the $30,000 claim as a proper deduction. Plaintiff's counsel will draft and tender for entry judgment in accordance with the foregoing findings.