## GERNHARDT–STROHMAIER CO., Inc. v. UNITED STATES.

### No. 27940.

United States District Court
N. D. California, S. D.
April 26, 1949.

Winston Churchill Black, San Francisco, Cal., for plaintiff.

Frank J. Hennessy, United States Attorney, C. Elmer Collett, Assistant U. S. Attorney, San Francisco, Cal., for defendant.

GOODMAN, District Judge.

Plaintiff corporation is a stove appliance service concern. In this action it seeks refund of excess profits taxes paid for the years 1941–1942–1943, totalling the sum of $7,856.35. In its returns for the taxable years in question, the excess profit tax "credit" of the taxpayer was calculated according to the so-called "invested capital method." 26 U.S.C.A. § 714. Later, the taxpayer plaintiff asserted, in a claim for refund, its right to compute its excess profits tax credit pursuant to the provisions

of Supplement A, §§ 740–744, Internal Revenue Code, 26 U.S.C.A. §§ 740–744. This suit followed after administrative denial of the claim. The right to so compute the credit is not disputed by the defendant. But the issue raised is the correctness of the officers' salaries which constitute the excess profits tax "credit." Plaintiff is entitled to recover if the amount of such salaries is reasonable. The defendant contends that the salaries are unreasonably low and should be a total, for the three officers, of $12,000 per annum instead of $9,000 per annum as claimed by the taxpayer plaintiff.

■ Plaintiff corporation was not formed until 1939. It succeeded a partnership consisting of three partners, two of whom in turn became the officers of the corporation. The shares of stock of the corporation were issued in proportion to prior partnership interests. Prior to 1939 and during the years 1936–1939, the three partners each withdrew $3,000 per year from the partnership. In order to determine the amount of the excess profits tax credit, the partnership must be treated as if it were a corporation during the base period. Int.Rev.Code, § 742; Sec. 30.742–1(b). Excess Profits Tax Regulation. Then it must be determined whether the amount withdrawn by the three partners would have been reasonable compensation for the three if they were then officers of the corporation. This is for the reason that, under the regulations, the period 1936–1939 is the base period for the determination of the amount of the "credit" in the taxable years. Sec. 30.740–3(b) Excess Profits Tax Regulations. In 1940 after the corporation was formed, each of the two remaining partners as officers drew $8,000 yearly salary, in the years 1941–1945, $12,000 each, and in the years 1946–1948, $16,000. The record shows that the business of the corporation substantially increased from 1940 on, both as to gross sales, gross profits and net profits, before taxes.

It is provided in the Excess Profits Tax Regulations that, in computing the tax credit, a reasonable deduction for salary or compensation for personal services actually rendered shall be allowed. Excess Profits Tax Regulations Sec. 30.742–1(b)1.

The sole question then presented in this case is whether or not the $3,000 withdrawn by each of the partners during the base period was or was not reasonable compensation for services rendered by them.

■ In most tax cases, the government usually scrutinizes salary payments, when sought as deductions from gross income, with a view to determining whether or not such deductions are too high. In this cause, however, it serves the purposes of the government to urge that the payments drawn by way of compensation for personal services were not high enough, for the obvious reason that the higher the amount of compensation for personal services, the lower the excess profits tax "credit." However, there can be no doubt that the test of reasonableness of so-called salary deductions should be the same whichever oar is pulled. Reasonableness of such compensation is a question of fact. E. Wagner & Son v. Comm. of Internal Revenue, 9 Cir., 93 F.2d 816; Sunset Scavenger Co. v. Comm., 9 Cir., 84 F.2d 453; General Water Heater v. Comm., 9 Cir., 42 F.2d 419. For standards of reasonableness in such cases, see Commercial Iron Works v. Comm., 5 Cir., 166 F.2d 221; Van Hooser & Co. v. Glenn, D.C., 50 F.Supp. 279, at page 285; 4 Mertens, Law of Federal Income Taxation Sec. 25.49; 25.51.

[3] The burden of establishing the reasonableness of the compensation paid is on the taxpayer. Botany Worsted Mills v. United States, 278 U.S. 282, at page 289, 49 S.Ct. 129, 73 L.Ed. 379.

■ The factual record in this case is meager. The strongest factor in favor of plaintiff is that the amounts drawn in the base period were completely unrelated to tax liabilities or results. D. & N. Auto Parts Co. v. Commissioner, 8 T.C. 1192. They appear to be the amounts which the three partners in good faith considered proper to draw. The company was able to operate with reasonable success on the basis of such withdrawals. The fair inference follows that the withdrawals were reasonable as compensation for services. Toledo Grain & Milling Co. v. Commissioner, 6

Cir., 62 F.2d 171; Ox Fibre Brush Co. v. Blair, 4 Cir., 32 F.2d 42, 43, 45, 68 A.L.R. 969.

The government's contention that at a later period after incorporation, larger salaries were paid, does not, in my opinion, mitigate against the fairness of this inference because (1) the business of the corporation had very substantially increased in the years following 1940 and (2) no evidence was presented by the government, nor is there anything in the record, as to the reasonableness of the larger withdrawals made during the years 1940 et seq.

█ Despite the lean record, there is sufficient of a picture presented as to the nature of the business of the corporation and its history to justify the conclusion that the plaintiff has sustained the burden of proof.

Judgment will therefore go for the plaintiff as prayed. Prepare findings pursuant to the Rules.