## BALTIMORE DAIRY LUNCH, Inc.
### v.
### UNITED STATES.
### Civ. A. No. 3144.

United States District Court,
D. Minnesota, Fourth Division.
May 7, 1954.

---

Joseph A. Maun and William R. Busch and Bundlie, Kelley, Finley & Maun, St. Paul, Minn., for plaintiff.

H. Brian Holland, Asst. Atty. Gen., and Andrew D. Sharpe, Paul S. McMahon and Allen A. Bowden, Sp. Assts. to the Atty. Gen., George E. MacKinnon, U. S. Atty., and Alex Dim, Asst. U. S. Atty., St. Paul, Minn., for defendant.

JOYCE, District Judge.

This is an action by plaintiff corporation to recover the income, declared value excess profits and excess profits taxes which plaintiff claims were erroneously collected from it with respect to its taxable year ending December 31, 1943.

The matter has been submitted upon the stipulation of the parties and evidence taken in connection with the three matters apparently in dispute. As a part of the stipulation, the parties have agreed that upon the court's determination of such issues, the amount of the tax refund, if any, to which the plaintiff is entitled will be determined by further agreement of the parties, or, if such agreement cannot be reached a motion will be made to the court for such determination.

The matters in dispute are:

1. Whether plaintiff is entitled, as it claims, to a deduction for the entire amount of salary, $16,621.68, which it paid its general manager, W. P. Owens, in 1943. The Commissioner of Internal Revenue allowed a deduction of only a portion of this amount, or $7,600.

The other issues relate to deductions claimed by plaintiff with respect to the computation of its tax for the year 1945. Such claimed right of deduction is relevant here because taxpayer claims its 1945 operations resulted in a loss for tax purposes and the amount of such loss, if any, computed on the basis of the deductions properly available to the taxpayer is an element in the determination of the amount of the 1943 tax under the net operating loss carryback provisions of the Internal Revenue Code, 26 U.S.C.A. § 122.

2. Whether the purported payment of salaries by the corporation's delivery of its promissory notes in the face amount of $8,483.72 in 1945 is the proper subject of a deduction for salaries paid in that year, the taxpayer being on a cash receipts and disbursements basis.

3. Whether in computing its 1945 net income or loss the plaintiff may deduct the declared value excess profits tax of $2,383.55 which it paid in that year.

With reference to the first issue the relevant statutory provision is Section 23(a)(1)(A) of the Internal Revenue Code, 26 U.S.C.A. § 23(a)(1)(A), which provides:

"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

"(a) Expenses

"(1) Trade or business expenses.

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered;
* * *."

W. P. Owens, the recipient of the compensation in 1943, the deductability of which is in issue here, has had extensive experience in the type of restaurant operation in which plaintiff is engaged. Prior to 1915 the Baltimore Dairy Lunches were part of a chain owned by one Whitcomb, the founder. Owens commenced employment with such business in 1902 and worked in all capacities from bus boy to manager of a unit. In 1915 he formed a partnership with Whitcomb's son and within a year this partnership had acquired all of the Baltimore Dairy Lunches in Minneapolis and St. Paul. This was an independent business in which Owens and Whitcomb were equal partners, the only connection with the national system being that the partnership was required to pay a nominal royalty for the use of the name.

In 1935 this partnership was incorporated. Whitcomb and Owens each received 45 of the authorized 100 shares of the stock of the corporation which is the plaintiff here. Five shares were issued to Owens' wife and five shares to Whitcomb's mother.

The business of the corporation consisted of the operation of restaurants in the nature of cafeterias specializing in the service of sandwiches and beverages of various kinds, the food being taken by the customers on a tray to chairs equipped with an arm rest and serving in lieu of tables. In the course of time the variety of foods served was increased and hot foods and soups were made available through the addition of steam tables. In 1943 and apparently for some time prior thereto the plaintiff operated four such restaurant units, although by 1945 this number had been reduced to two. One of the units was open twenty-four hours a day and seven days a week, the other three being open from 6 A.M. to 6 P.M., or later, and two of these three were also open seven days a week.

Owens was plaintiff's manager in 1943 as he had been since its incorporation. Whitcomb was a resident of New York and his connection with the business was restricted to short and infrequent visits to Minneapolis and the giving of advice. Accordingly, from the inception of the business, Owens was responsible for all management functions including the employment, training and supervision of personnel, the purchasing of food and supplies, and the control of food preparation in each restaurant, and he devoted his full time to such duties. He testified that because of the wartime shortage of labor it became increasingly difficult particularly in 1943 to find adequate personnel and there was a constant turnover in employment. In addition his two sons who were full-time employees and had been employed respectively one and three years went into the service and were not replaced. There is a lack of evidence as to their precise duties while they were so employed, but it may be assumed, as Owens' testimony indicates, that their departure increased his work load to some extent.

In any event it appears, again from Owens' testimony, that he worked long hours in 1943, from eleven to fifteen hours a day, and while he does not claim to have worked such hours seven days a week he considered himself on call every day. It is impossible to draw any firm comparison between the extent and character of Owens' work in 1943 as contrasted with other years because of a lack of detailed evidence regarding his work and hours of work in such other periods. It is, however, to be fairly assumed that his volume of work increased in 1943 although the nature of his duties remained unchanged.

Plaintiff's gross receipts for the taxable year ended December 31, 1943 were $98,425.67, and it paid Owens a salary of $16,621.68. Plaintiff's tax return made before March 15, 1944 disclosed a net loss of $5,242.47. The Commissioner caused plaintiff's books and records to be examined with respect to such tax year and on the basis of certain adjustments demanded additional taxes totalling $9,313.79. This amount with interest of $931.61 was paid by plaintiff on November 15, 1945 to the Collector for the District of Minnesota. The deduction with

respect to the salary paid to Owens was reduced by the Commissioner to $7,600 and of the salary of $11,479.10 paid to Whitcomb only $2,500 was allowed as a deduction. It should be noticed that plaintiff's claim with reference to the disallowance as to Whitcomb as included in the complaint is not urged here or made an issue upon the trial.

As disclosed by various exhibits in evidence, the taxpayer's gross sales, net income and salary paid to Owens were as follows for the years subsequent to incorporation and through 1946. Fractions of a dollar are disregarded.

| Year | Gross Sales | Net Income | Owens' Salary |
|------|-------------|------------|---------------|
| 1935 | $30,606 | ($3,110) | $ 3,524 |
| 1936 | 72,643 | ( 2,003) | 7,636 |
| 1937 | 66,702 | ( 4,215) | 7,636 |
| 1938 | 66,505 | ( 3,933) | 7,636 |
| 1939 | 63,697 | ( 824) | 5,277 |
| 1940 | 66,074 | ( 2,453) | 7,487 |
| 1941 | 65,323 | ( 3,091) | 6,364 |
| 1942 | 93,027 | ( 1,799) | 9,974 |
| 1943 | 98,425 | ( 5,242) Note 2 | 16,621 |
| 1944 | 56,215 | ( 1,044) | 7,010 |
| 1945 | 51,083 | ( 6,944) | 7,600 |
| 1946 | 65,541 | 6,066 | 7,600 |

Note 1—Figures in parentheses indicate loss.
Note 2—After adjustment of Whitcomb's salary to amount allowed by the Commissioner as a deduction, the net taxable income would be $3,736.
Note 3—No dividends were paid in any year shown.

When the corporation was first organized in 1935 it entered into contracts with both Owens and Whitcomb whereby Owens' salary was set at $7,636.72 a year and Whitcomb's at $6,500 a year. It is apparent that these contracts were not adhered to in practice and therefore cannot be considered as controlling or relevant in any way on the present issue except as they incidentally indicate that the corporation in practice followed no particular plan with respect to the amounts paid as salaries.

It is clear that Whitcomb and Owens had complete control over the determination of the amounts to be paid to them in salaries and as to 1943 that Owens made the determination himself apparently without consulting Whitcomb.

■ The plaintiff, of course, has the burden of proving the reasonableness of the compensation paid and that such amounts were paid to Owens as compensation for services actually rendered. Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379. There is no question that Owens was qualified and rendered substantial services and the issue is whether the amounts paid were reasonable. Since Owens was a substantial stockholder at the beginning of 1943 and during the course of the year acquired more stock so that at the time the larger portion of his compensation was determined upon and paid he owned 95 per cent of plaintiff's stock, the evidence in the case must be carefully scrutinized to determine whether the amounts designated as compensation for services were not in reality a distribution of profits. See T. P. Taylor & Co. v. Glenn, D.C.W.D.Ky., 62 F.Supp. 495.

■ In determining the issue of reasonableness of the salary paid, the nature and extent of the services rendered must be considered by the court. In addition, however, there are other relevant matters to be taken into account such as the position of the business with respect to gross sales and net return and particularly what might be described as the market value of the services rendered. It is apparent that the cost of obtaining equivalent services, the salaries paid by others therefor, or what Owens could have obtained elsewhere, are particularly important considerations where, as here, the recipient of the compensation owned virtually all of taxpayer's stock. Crescent Bed Co. v. Commissioner, 5 Cir., 133 F.2d 424, 425; J. D. Van Hooser & Co. v. Glenn, D.C.W.D.Ky., 50 F.Supp. 279, 286.

Owens testified as to the reasonableness of his own salary and the witness Turnbull testified on his behalf. Turnbull was in the restaurant business for some thirty years, was a president of the Minnesota Restaurant Association for some time and in connection therewith inspected and was familiar with many restaurant operations in the State. In addition he is a consultant with respect to cost control in the restaurant business

and has contributed articles on that subject to trade journals. However, he did not testify directly as to the reasonableness of the salary paid to Owens. At page 132 of the transcript he stated:

"I'm not testifying what it should be, whether it was justifiable or not, or whether it was reasonable, or how it could be arrived at in order to be justified."

Nor did he testify directly with reference to the other important considerations mentioned above. He did testify that according to accepted cost accounting practice no more than $200 per month of the amount of salary paid to the manager should be ascribed to each restaurant unit under his supervision as a direct labor cost, regardless of the amount of salary actually paid to such manager, and that such was the general practice. He also testified that it is customary in the restaurant business to compensate managers on a percentage basis and such percentages varied from 5 to 10 per cent of gross receipts or from 10 to 15 per cent of net profit. Other evidence indicated the plaintiff's net worth at the beginning of 1943 was approximately $4,000. Allowing only $2,500 as salary to Whitcomb, the amount of his salary determined by the Commissioner to be deductible, the net profit for such year was $3,736.63. Turnbull testified that this amount was a satisfactory operating return on the gross receipts shown. The connection between this testimony and the issue at hand is subject to some evident infirmities. That part relating to the allowance of $200 per month of management salary to each unit as a direct labor cost is based upon a general accounting concept which apparently takes little, if any, account of the size or type of the individual restaurant units. There is nothing to show that plaintiff's units were of a type warranting an allocation of the full amount of $200 per month or any part of it.

Compensation paid to management in the restaurant business varies greatly and Turnbull's testimony as to compensation on a percentage basis is not in any way particularized with reference to the great variety of operations in that business. Finally, the testimony as to net return assumes a condition which did not in fact exist. While the plaintiff did not contest the disallowance as to Whitcomb and it is not in issue here, the compensation actually paid to him cannot be ignored. The end result of the payment of salary to Owens cannot be divorced from that arising from the payment of Whitcomb's salary. The payment of the aggregate of the two resulted in the corporation suffering a net loss in 1943 as had been the case in every year since its inception.

Internal Revenue Agent, Polk, who made the examination of plaintiff's records and upon whose recommendation the disallowance of Owens' salary was made, testified for the Government. His determination was based primarily upon the fact that the corporation had in every year paid salaries which resulted in eliminating what would otherwise be net taxable income. For this reason, as well as the apparent lack of method in establishing salaries, he concluded that portions of the amount paid, as is contended by the Government here, constituted a distribution of profit. He frankly admitted his lack of qualification to testify as an expert on the question of salaries in the restaurant business.

Of course the crucial question here is not the reasonableness of the method, if any, used in fixing the compensation but the reasonableness of the result—the amount actually paid. Nevertheless, the lack of method is an element to be considered in that determination. In the present case, and as indicated above, the amount of salary payments was quite evidently determined solely on the basis of the amount of money available in the business for that purpose. A strong inference arises from the long continued practice of the taxpayer of paying out all the returns of the business in salaries

that such payments were in part at least a distribution of profits.

■■ Plaintiff contends that since it offered direct testimony as to the reasonableness of the salary and the Government offered none to the contrary, it must be concluded that the salary was reasonable, citing among other cases J. H. Robinson Truck Lines, Inc. v. Commissioner, 5 Cir., 183 F.2d 739, and Wright-Bernet, Inc. v. Commissioner, 6 Cir., 172 F.2d 343. However, such rule applies only where the Government submits no evidence at all. Where, as here, evidence has been introduced disclosing the details of plaintiff's operations for a period of years with reference to gross revenues and net return, the court is permitted to make its determination on the basis of the record as a whole. Burford-Toothaker Tractor Co. v. Commissioner, 5 Cir., 192 F.2d 633; Heil Beauty Supplies, Inc., v. Commissioner, 8 Cir., 199 F.2d 193.

■ On the basis of all the evidence presented in this case the court finds that the plaintiff has not sustained the burden of proving that the determination of the Commissioner as to this issue was erroneous. See Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129.

■ With respect to the second issue it appears that the giving of promissory notes to Mr. and Mrs. Owens in the amounts of $6,370 and $2,113.72 in the year 1945 as compensation for services rendered was not a payment of such expenses during 1945 so as to be deductible in that year. The taxpayer is on a cash basis, the notes were paid in cash ·in 1946, and the deduction should properly be taken with respect to that year as was determined by the Commissioner. The terms "paid ·or incurred" as found in Section 23, Internal Revenue Code must be construed in accordance with the method of accounting used for tax purposes by the taxpayer. Treasury Regulations 111, Sec. 29.43–1.

■ Common law rules do not control when determining whether or when there has been a payment for income tax purposes. Hart v. Commissioner, 1 Cir., 54 F.2d 848. And the present question is governed by Helvering v. Price, 309 U.S. 409, 413, 60 S.Ct. 673, 675, 84 L.Ed. 836 where the court said with reference to a claimed deduction for a bad debt:

> "As the return was on a cash basis, there could be no deduction in the year 1932, unless the substitution of respondent's note in that year constituted a payment in cash or its equivalent. There was no cash payment and under the doctrine of the Eckert case [Eckert v. Burnet, 283 U.S. 140, 51 S.Ct. 373, 75 L.Ed. 911] the giving of the taxpayer's own note was not the equivalent of cash to entitle the taxpayer to the deduction."

To the same effect are Hart v. Commissioner, supra, and Quinn v. Commissioner, 5 Cir., 111 F.2d 372. See Note 4 A.L.R.2d 1223.

■ The amount of declared value excess profits tax assessed for the years 1942 and 1943 was paid with interest in the year 1945. The Government concedes such payment and the amount thereof, $2,383.55 plus interest. The amount so paid appears to be a deductible item in 1945 for the purpose of determining net loss, if any, for carryback under section 122(a) of the Internal Revenue Code.

It is not apparent to the court that the availability of the above deduction will result in a 1945 operating loss or in a liability on the part of the Government to refund. However, the parties in accordance with their stipulation may

make the required calculations and submit appropriate proposed findings of fact, conclusions of law and order for judgment in accordance with the stipulation of facts on file herein and this opinion.