GRAham, Judge,
delivered the opinion of the court:
The question involved is whether certain sums paid to the executive officers of the petitioner corporation and made up in part of fixed salaries and in part of percentages of net earnings, and deducted as ordinary and necessary expenses and reasonable salaries, should be allowed as expenses.
This case was originally heard and decided and judgment entered for the plaintiff for the amount claimed. Thereafter the defendant filed a motion for a new trial, and for *491 modification and change in findings, for additional findings and vacation of the judgment and dismissal of the petition. The motion for a new trial was allowed and the case remanded to the docket. It was argued and submitted on March 1, 1928, and on April 2, 1928, an order was entered suspending the final decision of the case until the decision of the Botany Worsted Mills case, 63 C. Cls. 405, which was at that time before the Supreme Court for hearing on cer-tiorari. On January 2, 1929, the Supreme Court affirmed the decision of this court in the Botany Worsted Mills case, 278 U. S. 282, and dismissed the petition, grounding its decision upon the absence of certain elements or facts which it considered necessary to justify a recovery, which elements and facts are to be found in the findings in this case; so that the absence of facts necessary to a recovery in that case does not exist here, but on the contrary the necessary facts have been found, viz, that the apportionment of salaries to the directors was reasonable; that the value to the corporation of the services rendered was worth the proposed additional compensation; and the circumstantial facts necessary from which an inference could necessarily be drawn that the amounts paid were a part of ordinary and necessary expenses are existent here.
It clearly appears in this case that the compensation paid to the directors and heads of the departments by the plaintiff was a payment in good faith of compensation for valuable service rendered the corporation ,and was the cause which induced those receiving it to continue in the service of the plaintiff, and was neither unnecessary nor extraordinary, and justified the finding that it was a part of the ordinary and necessary expenses of the corporation.
The court, after argument of the motion for a new trial, considered and reviewed the evidence in the case and the objections to the original findings of fact, and has made additional findings of fact. The defendant introduced no evidence. The court has based its findings upon the evidence before it. As far as the witnesses testifying for the plaintiff are concerned, their intelligence, reliability, and qualifications have not been seriously questioned. As to the amount of the compensation in the case of each official, it *492 is a matter of common knowledge that compensation varies according to the opinion of those in control of a corporation as to the value of the services rendered, the volume of the business, amount of net earnings, and sometimes it is affected by locality and other considerations. So that there is no fixed and unalterable standard or yardstick by which the question of the reasonableness of the compensation in any particular case can be measured. Each case must stand upon the facts proved and the conclusion or inference that is to be drawn from those facts and all the circumstances of the case as to whether the amount paid, be it salary or a share of the profits, or both, was reasonable and should be regarded as a part-of the necessary and ordinary expenses of the corporation.
The history of the dealings of the Bureau of Internal Revenue with this corporation is deserving of brief notice. The system or policy of paying a percentage of profits as compensation in addition to fixed salaries had been used by the plaintiff in the conduct of its business since 1913, and it had deducted these percentages as a part of ordinary and necessary expenses in its returns prior to the year 1916. It did not deduct them for the years involved here, 1916, 1917, and 1918, because an internal revenue agent in December, 1915, in making an audit of the plaintiff’s previous tax returns, had ruled that they were not deductible expenses, but must be treated as dividends, which ruling was accepted by the plaintiff without seeking advice, and the additional taxes for the previous years based on this ruling were assessed and paid.
In 1920 Mr. Dixon, one of the plaintiff’s department heads who received a percentage of the profits here involved, and who had in accordance with the aforesaid ruling returned the percentage received by him for the year 1916 as a dividend and not as salary, was notified by the bureau that it could not be treated as a dividend but must be returned as salary, and he was assessed and compelled to pay an additional tax by reason thereof. It will thus be seen that the Bureau of Internal Revenue, after holding that these percentages paid were not deductible as expense for salaries but were dividends for the years prior to 1916, *493 which holding had governed the corporation in payment of its taxes during 1916, 1917, and 1918, reversed itself in the case of Mr. Dixon and held that they were not dividends but salary. The plaintiff thereupon, being apprised of this action in Mr. Dixon’s case, sought advice, and was advised that the percentages paid were salaries and deductible as expénses during the years 1916, 1917, and 1918. In accordance with this advice, claim for a refund was filed, and on its refusal this suit was brought.
Thus it appears that the Bureau of Internal Revenue in this case changed its ground and reversed its judgment on the same facts, its final judgment being in conflict with the judgment of the directors of the petitioner corporation.
The findings show that the salaries and percentages paid here were not paid to the parties receiving them simply because they were officers and directors of the corporation, but for services rendered. The mere size of the salary is not a matter for our consideration and, under the law, can not be determinative. The question is, taking the amounts received and viewing them in the light of all the proved facts, whether those paid for 1916 and 1917 for services rendered can be properly treated as part of the “ ordinary and necessary expenses ” of the corporation, and those for 1918 as reasonable salaries, so reasonable as to justify their being treated as part of the ordinary and necessary expenses of the corporation.
The policy of agreeing to pay a percentage of the earnings before they are earned, or even a sum in the nature of a bonus after they are earned, is based primarily upon sound business principles. It stimulates the activity, diligence, and ambition of the employees in the case of a percentage of the profits, and in both the case of a percentage and of a bonus it enables the corporation to justly compensate its employees without beforehand incurring the obligation. There is, however, nothing in this case to indicate a bonus. These salaries were agreed upon in January of the current year in which they were earned. Nor is there anything to show that they were intended as dividends, as they are not based upon the stock-holdings of the parties to whom they were paid, and the Bureau of Internal Revenue did not so hold, but treated the percentages paid as a distribution of profits. In the year *494 1916 three of the parties were not even stockholders. The action of the board of directors under ordinary circumstances in fixing the salaries raises a fair presumption of reasonableness in such case, and this presumption is the stronger in this case because the practice of compensating on what may be called a contingency was a settled policy of the corporation extending over a period of years prior to the years in question here and after these years, and in each year it was based upon the profits for that year. If the profits were small, the sum realized from the percentage was small, and if the profits were large, the sum so realized was larger, depending in each year upon the loyalty, vigilance, and intelligent effort, and the stimulated ambition of each of the parties. The success of the business was largely due to the individual efforts of these men, and the diligence they displayed and attention they gave to the particular branch of the business allotted to them. Its earnings did not depend upon the activities and efforts of a large number of subordinates.
The increase of the percentages as shown in different years can be readily understood from the well-known fact that there have been increases in salaries and compensation in almost every line of business and industry owing to the increased cost of living.
Every business is largely dependent upon the capacity, resourcefulness, and assiduity which its executive officers personally give to it, and particularly that part of it especially entrusted to them; and this is particularly true as to a business such as the petitioner’s.
The applicable provisions of the statutes involyed are section 12 (a)[1] of the revenue act off 1916, 39 Stat. 761, and section 234 (a)[2] of the revenue act of 1918, 40 Stat. 1057, 1077.
*495 Section 234 (a) oí the revenue act of 1918, supra, provides that the “ ordinary and necessary expenses ” should include the “ reasonable allowance for salaries or other compensation' for personal services actually rendered.” • It will be seen that the reasonable allowance under the statute can be either by salaries or by other compensation — i. e., a percentage of profits as in the case at bar — and that it must be for personal services actually rendered. The findings in this case show that it was for personal services actually rendered. As to this there can be no dispute. The question therefore turns upon whether the amount paid was a reasonable allowance, and it has been so found in the findings.
It has been further found that it was such a reasonable allowance as to justify its inclusion as a part of the “ ordinary and necessary expenses,” for which a credit should be allowed.
This is decisive of the case, and it might be left here. However, it seems advisable to elaborate it somewhat further.
The opinion of the Supreme Court in the Botany Worsted Mills case stated and epitomized what elements and facts were wanting in that case to entitle the plaintiff to recovery. They were stated in the following language:
“ The findings do not show the nature or extent of the services rendered by the board of directors or its individual members, either as directors, executive officers, or department managers — the amounts apportioned and paid to each director — the basis of apportionment, whether the nature and extent of their individual services, the amount of their .stockholdings, or otherwise — the value of their services — or the reasonableness of the purported compensation.”
It is clear that the Supreme Court did not hold in this case either that the size of the amount paid would prevent its being treated as ordinary and necessary expenses, or that ihe mere fact that a part of the compensation was in the form of percentage of profits would affect the recovery. The difficulty in that case, as pointed out by the court (p. 290), was that this court did not find “ that the amount disallowed by the commissioner constituted a part of the ordinary and necessary expenses of the mills. The findings are silent as *496 to this ultimate fact — essential to a recovery by the mills— and only show certain circumstantial facts relating to the payment made to the board of directors.” The findings in this case completely dispose of this objection. As stated, they find that the amount disallowed by the commissioner constituted a part of the ordinary and necessary expenses. In other words, “ the ultimate fact ” to which the Supreme Court alludes is found in this case.
What may be an ordinary and necessary expense for salary in a given corporation may vary from year to year, the variance being controlled by the fluctuating conditions of business generally and of the business itself and of the management. It also varies in different corporations, and sometimes in identical corporations engaged in the same business, located at the same place, and practically under the same management, it being in the end largely controlled by the human element involved — i. e., the capacity, .judgment, and diligence of those who control its operations.
It therefore becomes necessary in order to pass upon the question of the reasonableness of the amount paid and whether it can properly be treated as a part of the ordinary and necessary expenses, to consider somewhat in detail the character of the plaintiff’s business, the character of the officials it employed, the .value to it of the services rendered, the conditions under which they were employed, and the results.
It is undisputed that the plaintiff’s business was a peculiar one. Possibly the word “ unique ” describes it better, since the evidence discloses that there was probably not another like it in the United States. It had been built up by the president of the company, Mr. Gray, and was engaged in the business of a broker in chemicals and also as an exporter and importer of chemicals. Therefore, it is necessary to consider, first, the character, ability, and capacity for the work of the men employed. It is undisputed that they were most capable men for their work in théir respective departments, and that it was necessary to pay them more than the fixed salaries in order to secure and retain their services; that the success of the business was due to their superior service and diligence; that they could have earned as much or more *497 outside of the business; that Mr. Gray, who controlled the' business, had adopted it as a part of his policy extending over many years prior to the years involved here and subsequent thereto, of basing a portion of the compensation on the contingency of the earnings in order to stimulate the interest and activities of these assistants whose compensation is in dispute here. It will thus be seen that this policy was a part of the business, was regarded as, and actually was, necessary for its success and did contribute to its success, and so can fairly be said to have been an element in determining the ordinary and necessary expense of the business. The men were worth to the business the compensation paid them. They could not be retained without it and the business would have suffered had they severed their connection with it. Their retention was necessary to its success, and the success was due to their efforts, and the arrangement as to percentages of profits had been made in good faith. There is nothing in the record to even suggest that this was an effort to avoid taxation.
The volume of business was greatly developed from year to year until it reached a peak in 1916. Thereafter its earnings grew less, and as the earnings increased their compensation increased, and as the earnings decreased their compensation decreased. Falling off of the earnings was due to the peculiar business conditions of the period. It is clear from all the circumstances surrounding this corporation that the reasonableness of the salaries of all except Mr. Gray, the president, does not require any further discussion. They were not only reasonable but were based upon contract entered into before the compensation was earned, and could not be withdrawn during the year they were being earned, until after the net profits had been determined, when they had a legal right to their respective percentages. These were not bonuses or gratuities, they were not based upon the stockholdings of each, and were not dividends. They were a part of compensation earned under contract, and compensation earned for each particular year, the amount of which was not known in advance but depended upon their exertions and management of the business for the year.
*498 It seems advisable, inasmuch as Mr. Gray’s percentage of the profits was larger than the others, amounting to about 57%%, that some special comment should be made in connection with it. As to the amount paid Mr. Gray, while for 1916 it was large, for 1918 it was $84,000. There is undisputed testimony to the effect that the compensation paid in 1918 was insufficient and that in one other company, manufacturing chemicals, larger compensation was paid and allowed, the three heads of the business each receiving $100,000 per annum, and these salaries were allowed by the Government in the company’s tax return as part of the ordinary and necessary expense of the business. Mr. Gray’s aggregate salary for the year 1913 up to and through the year 1921 was about $99,000. We are of opinion, therefore, that it has been shown that all of the compensation paid here and involved in the refund claimed was reasonable and was a part of the ordinary and necessary expenses of the corporation, and the court has so found in its findings of fact.
In a footnote [3] is a list of cases, among a number, which have been considered by the Board of Tax Appeals, showing the varying percentage, and high percentage, of net income which has been allowed as reasonable compensation as a part of the ordinary and necessary expenses of the respective ■corporations. It varies from 46% to 295%. The average of the allowances in these cases is about 110%. The highest percentage paid Mr. Gray was 57%%. *
In the Francesconi & Co. case, cited in footnote, 217% was disallowed by the commissioner. The Board of Tax Appeals set aside the disallowance and allowed 217%.
*499 In Livingston & Co. v. United States, 67 C. Cls. 626, the commissioner allowed, and this court approved, the salaries for 1920 of $70,000, out of net earnings of $102,852.54, and in 1921 salaries of $50,000 out of net earnings of $79,875.99. This court held that these allowances were not unreasonable under the circumstances.
In the case of Seinsheimer Paper Co. v. United States, 63 C. Cls. 429, for the year 1917 the commissioner allowed, and this court approved, salaries of $50,000 out of net earnings of $75,569.38, in 1918 salaries. of $50,000 out of net-earnings of $68,220.30, and in 1919 salaries of $50,000 out of net earnings of $25,176.53.
While the net income in this case for 1916 after payment of fixed salaries and dividends was $461,986.47, and the amount of contingent compensation.was $430,000, representing something like 93%, yet in the year 1917 the percentage was less than 50%, and in 1918 it was about 40%.
In the instant case the total net earnings for -the three years, inclusive of fixed salaries and contingent compensation, amount to $1,292,901.24, and the amount paid out as salaries and percentage is $859,195.25, which makes an average for the three years of 67% of the net earnings. As stated, the defendant offered no evidence in this case.
Counsel for the defense quote as authority for their contention the case of Twin City Tile da Marble Company v. Commissioner, U. S. Circuit Court of Appeals, Eighth Circuit, opinion handed down March 25, 1929 [32 Fed. (2d) 229.] Prentice Hall Federal Tax Service, Report 13, p. 689. We do not think that case authority here. The facts were very different. The court distinctly held:
“ The question here really is not concerned with what is a reasonable salary. The evidence shows a distribution of dividends under the guise of salaries.”
In that case the distributions were based solely upon the amount of common stock holdings. The court further says:
“The increases were based solely upon the amount of common stock holdings and out of all proportion and in no wise based upon the character or amount of services rendered.”
*500 And further:
“ * * * The increases were effective without respect to the net sales of the company.”
The original findings of fact and opinion are withdrawn and new findings made; the original judgment is vacated and set aside and a new judgment entered in accordance with the conclusion of law and this opinion.
WilliaMS, Judge, and LittletoN, Judge, did not hear and took no part in the decision of this case.
GreeN, Judge, and Booth, Chief Justice, concur.

 Sbc. 12. (a) In the case of a corporation, * * * such net income shall he ascertained by deducting from the gross amount of its income received within the year from all sources—
First. All the ordinary and necessary expenses paid within the year in the maintenance and operation of its business. * * *

 Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:
(1) All the odinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable .allowance for salaries or other compensation for personal services actually rendered, * * *.

 Webb & Bocorselski, Inc., 1 B. T. A. 871, 46% allowed by commissioner and about 71 % by Board of Tax Appeals;
McMillan Metal Co., 2 B. T. A. 797, 79% allowed by commissioner and about 87 % by board ;
Record Abstract Co., 2 B. T. A. 628, 69% allowed by commissioner, approved ¡by board;
Brown & Brown, Inc., 10 B. T. A. 106, 67% allowed by commissioner, approved by board;
Strayer’s Business College, 10 B. T. A. 573, 74% allowed by commissioner and approved by board;
Francesconi & Co., 10 B. T. A. 658, salaries disallowed by commissioner, board allowed 217%.
H. V. Greene Co., 6 B. T. A. 442, 449, 450, compensation in form of commissions disallowed by commissioner, board allowed about 295%.