Craig Earl v. Commissioner.
Earl v. Commissioner
Docket No. 110850.
United States Tax Court
1943 Tax Ct. Memo LEXIS 286; 2 T.C.M. (CCH) 173; T.C.M. (RIA) 43247; May 25, 1943
*286 William J. Reinhart, Jr., Esq., 63 Wall St., New York City, for the petitioner. Walt Mandry, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent determined deficiencies in income taxes for years and in amounts as follows: Year
Amount
1937
$1,021.70
1938
6,362.07
1939
5,763.63
In reporting his income for the above taxable years petitioner had deducted as compensation for personal services, payments made to one Betty Brigham in the following amounts: Year
Amount
1937
$15,601.00
1938
29,840.93
1939
30,121.54
Respondent disallowed the deduction of each of these amounts under section 23 (a) of the Revenue Acts of 1936 and 1938, in so far as they severally exceeded the sum of $10,000 per annum, on the ground that they were unreasonable. The issue considered here is whether that action was correct. Findings of Fact Petitioner resides at Hillsdale, New York, and filed his Federal income tax returns for the taxable years with the collector of internal revenue for the Second District of New York. The form of radio program known as a question-and-answer program was originated over the Washington Station of the Columbia *287 Broadcasting System in the Spring of 1936. It was suggested by John Heiney, a Washington newspaperman, and was called the "Professor Quiz" program. After a five-months' trial the results were discouraging and the Columbia Broadcasting System was about to drop the program when it was decided to give it one last tryout in New York City. Petitioner, who for a number of years prior to 1936 had been professionally engaged as a lecturer and sleight of hand artist, was living in a rooming house in New York City, in such poor financial circumstances that it was necessary for him to borrow some money for living expenses from Betty Brigham. Miss Brigham had been a concert lecturer and stage artist and had traveled and performed extensively for some years. She had thereafter worked for Artist Bureaus in Boston as the agent for talent. In such latter capacity she had acted as the agent for petitioner in procuring him engagements in line with his profession for which he paid her a commission of 30 per cent which was then and is now a customary and reasonable commission for such services in and around Boston. About the time in the Fall of 1936 when Columbia Broadcasting System discontinued the *288 "Professor Quiz" program in Washington and decided to give it one last tryout in New York, the employee of Columbia who was in charge of the "Professor Quiz" program heard petitioner in an audition and offered to give him "air time" without compensation for services if he would put on the "Professor Quiz" program. Petitioner accepted. He then had to devise the format of the program. He lacked radio experience and needed help. He wrote the questions and answers for the first broadcast. It was determined that thereafter the questions and answers to be used would be selected from those submitted by the listening audience, if they could be induced to so cooperate. The "Professor Quiz" program was to be broadcast at the same time as the Jack Benny program, then the biggest half hour program in radio. In the meantime, Betty Brigham had left the theater business and was employed by Helena Rubenstein, the cosmetic firm, as head of its educational department in New York City. She, however, continued to keep in touch with some of the professional people whom she had represented, among whom was petitioner. In connection with her cosmetic educational work, she spent considerable time in New York. *289 So, in September 1936, shortly after the petitioner was invited to become "Professor Quiz" on the radio program of that name, and had accepted, he discussed the possibilities with Miss Betty Brigham and asked her if she would help him in the venture. She then agreed to do everything she could to "put the show over" for which petitioner agreed to pay her one-third of what he received. He tried out his first broadcast with her before giving it. The "Professor Quiz" program which opened in New York about the first of October 1936 was successful from the start. By the middle of October the radio audience was mailing in questions and answers for the program at the rate of 6,000 to 7,000 per week. Each one had to be read and evaluated and the best 30 to 50 questions and answers selected for use "on the air." Betty Brigham read or supervised the reading and selection of a comparatively small list from which petitioner selected those to be used on the program. The "Professor Quiz" program consisted of propounding as many of the selected questions to chosen contestants as the length of the program would permit. Great care had to be exercised not only in the choice of the questions but the *290 approximate equality of the mental capacity of the contestants to answer such questions. The programs were intended to combine education and amusement in such a way as to appeal most strongly to the radio audience. Prizes were rewarded to the writers of the selected questions and to the contestants. Betty Brigham notified the contestants chosen for each program, instructed them as to what they were to do and how they were to do it. She kept the "score" on the programs by there grading each contestant upon the result of which the prizes were awarded. After the middle of October the preparation for and conducting of the "Professor Quiz" program required all the time and attention of petitioner and Betty Brigham. Petitioner has a contract with Columbia Artists Bureau and John Heiney for the life use of the name "Professor Quiz," and was the dominant individual, so far as the public was concerned, in conducting that program. In December 1936 Columbia Broadcasting System agreed to pay petitioner $100 per week as "Professor Quiz" for putting on this radio program for a period of 10 weeks. Of this amount petitioner's agent, William Gernannt, received 20 per cent and the balance was paid *291 to petitioner who, in turn, paid one-third of the amount which he received to Betty Brigham. During that time the program continued to gain rapidly in popularity which correspondingly increased the work incident thereto. Soon after December the number of questions received by "Professor Quiz" amounted to twenty or thirty thousand per week. The separate room which Columbia Broadcasting System had set aside for Betty Brigham and two assistants to consider and answer became insufficient. Late in March of 1937, an advertising agency representing the Nash Kelvinator Company contracted to sponsor the program. This company agreed to pay petitioner $750 a week. Under this contract payment for each broadcast was made by its sponsor to Columbia Broadcasting System, which deducted the 10 per cent payable to its subsidiary, Columbia Artists Bureau, and paid the balance to William Gernnant, the agent of petitioner. He, in turn, deducted his agent's commission of 20 per cent and turned over the balance to petitioner who deposited the amount in his account and paid one-third for himself. His custom was to pay Betty Brigham $100 per week on account and the balance due at the end of each calendar *292 year. Under this arrangement. which lasted for two years, the sponsor provided office space, essentials and the salaries of the staff and announcer, as well as the cost of the prizes. Betty Brigham and the advertising agency representing the sponsor were jointly responsible for the selection of the prize winners. The sponsor furnished the increasing number of assistants Betty Brigham required for her work in connection with the program. These assistants sometimes numbered as many as 28, who were paid from $20 to $25 per week each. Betty Brigham set up a system under which they worked, and supervised its conduct. Under this sponsorship, the program was broadcast from different cities, which required considerable traveling. On these trips Betty Brigham acted as petitioner's secretary and "buffer." She frequently represented him in speaking engagements before local clubs and organizations. About the middle of 1939 the contract with the sponsor was changed and the program "Professor Quiz" was sold as a "package." Under this arrangement the sponsor paid one lump sum to petitioner's agent, who then set up books for the program and a separate bank account from which he paid all salaries, *293 commissions, including his own, announcer's fees, cost of prizes, expenses of traveling, rent, telephone, etc., and the balance was then distributed by petitioner's agent directly, one-third to Betty Brigham and two-thirds to petitioner. Petitioner married Brigham on May 12, 1937. In October 1941 the show went off the air. The petitioner in his income tax return for the year 1937 reported on Schedule A thereof "Income from salaries and other compensation for personal services" the sum of $46,803.10 as received from the "Columbia Broadcasting Co. with payments to me through my manager William Gernannt, Tappant, N. Y.," and from such gross sum deducted as expenses of the program the sum of $26,782.10 leaving a balance of $20,021, which he reported as taxable income from salaries and other compensation for personal services. Among the expenses so deducted was the sum of $15,601, with the explanation "Betty Brigham, pursuant to contract entitling her to 1/3 my gross income." The petitioner reported the income and deductions for the years 1938 and 1939 in a similar manner. Betty Brigham in her income tax return for the year 1937 reported on Schedule A thereof "Income from salaries and *294 other compensation for personal services" the sum of $15,601 with the explanation as received from "Dr. Craig Earl, known as 'Professor Quiz' pursuant to contract," and after deducting therefrom expenses of $1,200 reported the balance as taxable income from salaries and other compensation for personal services. Betty Brigham reported her income for the years 1938 and 1939 in a similar manner. The respondent in the notice of deficiency allowed the petitioner a deduction of $10,000 in each of the years 1937, 1938 and 1939 as reasonable compensation paid Betty Brigham, disallowed the balance of the claimed deductions as excessive, and rejected the contention that a partnership existed. The foregoing amounts, admittedly paid by petitioner to Betty Brigham as compensation for her services during the respective taxable years, were reasonable. Opinion Petitioner contests the action of the respondent upon two grounds. He argues (1) that the compensation he paid Betty Brigham for her services during the taxable years was reasonable when considered with the circumstances existing at the time he and she made the oral contract under which that compensation was contingently payable, and (2) *295 that he and Betty Brigham were joint venturers or partners in putting on the "Professor Quiz" radio program under that contract as a result of which relationship she was entitled to the moneys he paid her. We decide the question on the first ground, without considering the second. Section 23 (a) of the controlling Revenue Acts provides as follows: In computing net income there shall be allowed as deductions: (a) Expenses. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. Whether the contested payments as salaries to Betty Brigham by petitioner were reasonable is a question of fact. The payments here were made under a contract *296 which, in effect, provided that no compensation was payable unless petitioner was paid. In the circumstances disclosed here, the receipt of any compensation by the petitioner and therefore by Betty Brigham was highly contingent. The program had already failed to go over in Washington. Petitioner was practically without radio experience and was financially embarrassed. He had nothing to lose from the venture. He needed the experience, the judgment, ability and help of Betty Brigham. She agreed to and did supply those qualities upon which, we think, a substantial part of the success of the "Professor Quiz" program rested. This agreement was made before the program had succeeded, when any success was, to say the least, highly speculative. The respondent, by his Regulations, has recognized that contingent compensation payments, such as these, require more liberality in their treatment than fixed payments. Not only that, but respondent there accepts the conclusion that the reasonableness of such a contract should be judged, not by the circumstances later revealed by the actual working out of the contract, but by those conditions which existed at its inception. Art. 23 (a)-6, Regulations *297 94 and 101; section 19.23 (a)-6, Regulations 103. Having considered all such circumstances as well as the record generally, we believe and have so found that the disputed compensation payments here were reasonable, and are therefore deductible. See (Austin v. United States, 28 Fed. (2d 677; William S. Gray & Co. v. United States, 68 Ct. Cl. 480, 35 F.2d 968. And this conclusion is not disturbed by the fact that, some six months after the execution of the contract under which these payments were made, petitioner and Betty Brigham were married. See Anna E. Riley, 29 B.T.A. 160; det. for review dismissed, 70 F.2d 1013; Grace Johnson Munroe, 32 B.T.A. 995. Decision will be entered for the petitioner.