ROBERT ROGERS, Inc. v. UNITED STATES.

No. 49086.

United States Court of Claims.

Dec. 5, 1950.

Alfred O. Heitzmann, St. Louis, Mo., H. M. Stolar, St. Louis, Mo., on the briefs, for plaintiff.

J. W. Hussey, Washington, D. C., Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

WHITAKER, Judge.

Plaintiff sues for the refund of additional taxes assessed against it as the result of the disallowance of part of the compensation paid its manager in the year 1941.

Plaintiff is a brokerage company engaged in the sale of machine tools. During the time in question it represented exclusively a number of manufacturers of machine tools within the territory embracing all of the States of Missouri, Oklahoma and Kansas, the southern half of Illinois, eastern Nebraska, and, for certain tools, the State of Colorado. Robert R. Stephens was the president and sole stockholder of plaintiff. He and one other sales engineer were the only two employees, other than clerical help.

In 1924 he was appointed a captain in the Reserve Corps of the Ordinance Department of the United States Army. On February 1, 1941, he was called into active duty and assigned to the Cleveland Ordinance District. This occupied his entire time and made it impossible for him to devote any substantial time to plaintiff's business. It was, therefore, necessary for him to secure a man to manage the business during his absence. He asked his brother T. C. Stephens to do so.

T. C. Stephens had been employed by plaintiff for a little over two years as a sales engineer. From this employment T. C. Stephens in the previous year (1940) had realized a total compensation of $14,400, but when he was selected to take charge of the business, he asked for a fixed compensation of from $40,000 to $50,000 a year. Robert R. Stephens was unwilling to pay him so large a fixed salary, but preferred, instead, to pay a small fixed salary plus a percentage of the profits of the business. He proposed to his brother that he accept a salary of about $8,000, plus a bonus of one-half of the net profits of the business before deduction of taxes. Robert R. Stephens believed, and so represented to his brother, that the volume of business during the year 1941 would probably be double that of 1940. If so, he said to his brother that he would realize a total compensation of between $40,000 to $50,000 a year.

This proposal was agreed to.

The profits for 1941, however, far exceeded anything either one of the brothers had expected. Instead of the volume of sales doubling in the year 1941, they were four or five times what they were in 1940. It resulted that T. C. Stephens under his contract received a bonus of $169,031.42, which, together with his fixed salary, made the total compensation received by him $176,984.99.

Plaintiff in its tax return claimed a deduction of the full compensation paid T. C. Stephens. The Revenue Agent who examined the return disallowed $141,984.99 of the amount, on the ground that the salary paid T. C. Stephens was unreasonable to that extent. The Commissioner of Inter-

nal Revenue disallowed $61,984.99 of the amount. This also was on the ground that to this extent the compensation paid was unreasonable. Resulting taxes were assessed and paid. Plaintiff then filed claim for refund, which was disallowed, and it then brought this suit.

 We are of opinion that the Commissioner of Internal Revenue was in error in disallowing any part of the compensation paid T. C. Stephens.

In the year 1940 Robert R. Stephens had received a compensation of $30,000 for managing plaintiff's business. When T. C. Stephens was asked to take over the management he asked for a salary of from $40,000 to $50,000, somewhat of an increase, but justified, he said, since it was anticipated the volume of business would double in the ensuing year, entailing additional work and responsibility. This was not an unreasonable demand. This demand was not assented to, but the compensation agreed upon, it was estimated, would amount to about this amount, if the volume of business doubled, as was expected. It was not unreasonable to expect that the business would double, but no one had any reason to expect a much larger increase. The business of machine tool manufacturers generally increased in 1941 about 75 percent over 1940. Plaintiff had no reason to expect that its own business in 1941 would be four or five times its 1940 business.

 The test of the reasonableness of a salary agreed upon is the situation existing at the time the agreement is entered into; it is not to be determined by subsequent events not foreseen by the contracting parties. This is explicitly recognized by the Treasury Regulations. Section 19.23 (a)-6 of Regulations 103 says in part: "The circumstances to be taken into consideration are those existing at the date when the contract for services was made, not those existing at the date when the contract is questioned."

At the time this salary arrangement was agreed upon it appeared to be a reasonable one. As it turned out, the amount paid was much larger than had been anticipated.

Things happened in the year 1941 that neither of the brothers expected. The Western Cartridge Company Small Arms Plant was established in plaintiff's territory, and also the Remington Arms Plant, and large war contracts were entered into by the Emerson Electric Company and the McQuay-Norris Company, neither of which had previously engaged in this line of business. While Robert R. Stephens and T. C. Stephens did expect a large increase in the volume of business, they had no good reason to believe that there would be such a tremendous increase.

· The Regulations cited above further say: "* * * Generally speaking, if contingent compensation is paid pursuant to a free bargain between the employer and the individual made before the services are rendered, not influenced by any consideration on the part of the employer other than that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid."

There can be no doubt that this contract was entered into between plaintiff and T. C. Stephens "pursuant to a free bargain between" them. Robert R. Stephens owned all the stock in the plaintiff; T. C. Stephens owned none, except one share to qualify him as a director. This was not a distribution of the profits of the business in the guise of salary. Nor was Robert R. Stephens making a gift to his brother of the profits of his business. This is evidenced by the fact that when it developed that T. C. Stephens was realizing an unexpectedly large amount under the contract, his brother insisted upon a reduction of the amount to be paid in subsequent years. The amount agreed upon was the amount which T. C. Stephens originally requested.

Plaintiff had to pay, and did pay T. C. Stephens the amount of the salary agreed upon for 1941, and it is unjust for it to be required to pay taxes as if this compensation had not been paid. T. C. Stephens paid taxes, in the amount of $105,693.74,

on the salary received by him. The Government should not demand from him taxes on what he received, and then charge the corporation with taxes as if it had not paid him what he actually received. The taxes paid by T. C. Stephens amounted to $105,-693.74. The Government demanded and got $42,273.88 as if T. C. Stephens had received only a part of his salary, although he paid taxes on all of it.

The conclusion we have reached is in line with our former opinion in William S. Gray & Co. v. United States, 35 F.2d 968, 68 Ct.Cl., 480; and with the opinion of the Fifth Circuit Court of Appeals in Austin v. United States, 28 F.2d 677, and with a number of decisions of the Tax Court. We do not think it runs counter to the Supreme Court's opinion in Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379, and the other cases cited by defendant. An essential difference between this case and those cited by defendant is that in them the recipient of the salary owned a substantial amount of stock in the company, whereas here he owned none.

Judgment will be entered in plaintiff's favor against the defendant for $42,273.-88, plus interest as allowed by law.

HOWELL, MADDEN, and LITTLETON, Judges, concur.

JONES, Chief Judge (dissenting).

I cannot agree with the conclusion reached by the majority. In my judgment the Collector of Internal Revenue dealt fairly, almost generously, with the plaintiff.

Here was a case of a one-man company owned by Robert R. Stephens, who, upon becoming a civilian employee of the Army Ordnance Department on February 1, 1941, contracted with his brother to become vice president and general manager of the company. He agreed to pay him one-half the profits of the company as compensation during Robert R. Stephens' absence. Under this contract T. C. Stephens was paid $176,984.99, and this salary compensation was reported as a deduction by the plaintiff company for the year 1941. The Commissioner of Internal Revenue held that the compensation was unreasonable as a salary deduction under the terms of the statute, and disallowed $61,984.99, allowing the company $115,000.00 as an expense for the item indicated. The pertinent part of Section 23 of the Internal Revenue Code, 26 U.S.C.A. § 23, lists among the items allowed taxpayers as deductions the following: "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *."

The regulation issued pursuant to the statute authorizes a deduction for any salary paid provided the amount is reasonable under all the circumstances, but states that the circumstances to be taken into consideration are those which existed at the date when the contract for services was made.

I doubt whether the circumstances at the time of the making of the contract should be the sole governing factor, although they should of course be the major consideration.

What were the circumstances at the time of the making of this contract? Robert R. Stephens was the sole owner of plaintiff company. He was largely responsible for its success. He was very familiar with ordnance matters, having worked with the Ordnance Department during World War I. He held an exclusive contract for the sale of machine tools in several mid-western states. At the time of the contract he became a civilian employee of the Army Ordnance Department. He certainly was familiar with the conditions that then existed.

At that time Europe was aflame with war, and the ideas of world-wide conquest on the part of two dictators in Europe was a matter of common knowledge. As early as 1938 defense preparations began to increase greatly and defense expenditures in the United States as a matter of security were largely increased. The President had recommended many thousands of additional planes and an increase in defense equipment of all kinds. The appropriations for the Army, Navy, and Marine Corps were

nearly twice as large in 1940 as in 1938, and in 1941 were six times as large as in 1940. The President's budget which was submitted in early January 1941, nearly a month before the contract in question was made, had asked for the large 1941 increases. It was a foregone conclusion that the appropriation would be made. The average citizen, to say nothing of one who was in the business in which Robert Stephens was engaged, was familiar through radio, press, committee hearings, and public documents with these increasing defense preparations.

This naturally called for great expansion of the machine-tool business. Does anyone think for a moment that Robert R. Stephens would have made such a contract in these circumstances with anyone else than his brother? If the Stephenses didn't know, they were probably the only living Americans who had reached the years of discretion who were not fully cognizant of the fact that our country was on the threshold of a lavish expenditure for defense equipment and of a consequent great increase in the manufacture and distribution of machine tools. It is true the record is to the effect that neither of them expected anything like the expansion that came during the year 1941, but anyone as experienced as Robert R. Stephens in this line of business, and who was holding a position in connection with the Army Ordnance Department, certainly must have known that there was a likelihood of considerable increase in the affairs of his company, holding as it did, exclusive contracts for a large area with several manufacturers of machine tools.

It is the universal rule, based on human experience, that family arrangements are scrutinized closely.

I have no doubt that the profits were much greater than either of the brothers expected. No doubt T. C. Stephens worked long hours and deserved increased compensation, but prior to this contract he had never earned more than $15,000 a year. The allowance which the Commissioner made of $115,000 as that portion of his salary which was entitled to be claimed as a deduction by the company which paid him it seems to me was entirely reasonable.

On the question of whether the circumstances at the time of the making of the contract should be the sole governing factor I quote from Hoffman Radio Corp. v. Commissioner, 9 Cir., 177 F.2d 264, 266, as follows: "It is not thought that the regulations, considered in their entirety, establish the hard and fast rule that a contingent contract, fair and equitable when made, becomes permanently immune from scrutiny regardless of how radically conditions may alter; and that is what petitioner's legal argument amounts to. Acceptance of the argument would in many instances nullify the plain language of the statute. The key provision of the regulation, we think, is the statement that *in any event* the allowance for compensation may not exceed what is reasonable considering all the circumstances. * * *"

To the same effect is the holding in Charles E. Smith & Sons Co. v. Commissioner of Internal Revenue, 6 Cir., 184 F.2d 1011 (Per curiam opinion). There Hall C. Smith was sole shareholder and president of taxpayer, a shirt manufacturer. In 1941 the company obtained a war contract to manufacture tow targets. Smith's annual salary for the years 1936 to 1941, inclusive, fluctuated between $4,800 and $10,800; in 1941 it was $4,800. In 1941 a resolution was adopted increasing his salary to $52,000 for the year ending July 31, 1942. In 1942 a resolution was adopted authorizing payment to him of 15% of the sales for the coming year. This resulted in a salary of $87,265.08. The Tax Court said that a reasonable allowance for the first year was $25,000 and for the second year $30,000. The Sixth Circuit held that this determination was not erroneous. The market was created by the war, not by Smith. It was held that although he worked long hours and faithfully, the increase in his compensation of nearly 1,000% for the first year and over 1,700% for the second was not reasonable. See also Wood Roadmixer Co. v. Commissioner, 8 T.C. 247.

That it seems to me is a reasonable construction of the statute. However, even assuming that the circumstances at the time of the making of the contract were the sole and only factors to be considered, I think the clear circumstances of this case with the year by year increases in appropriations for defense materials carried with them the sources of full knowledge or at least full notice of the likelihood of a tremendous increase in plaintiff's business. Even though the business increased much more rapidly than had been anticipated by either of the contracting parties, there was so much evidence of a substantial increase as to make it apparent that the plaintiff would have made no such contract with anyone but a member of the family. I would dismiss the petition.