**R. J. REYNOLDS TOBACCO COMPANY**

v.

**The UNITED STATES.**

No. 254–54.

United States Court of Claims.
April 3, 1957.

Marion N. Fisher, New York City, for plaintiff. Leon L. Rice, Jr., W. P. Sandridge, Winston-Salem, N. C., Philip C. Potter, Jr., Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, and Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., were on the briefs.

Homer R. Miller, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Andrew D. Sharpe and Thomas Hogan, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

This action is brought to recover income and excess profits taxes allegedly improperly assessed against plaintiff for the years 1940 to 1948, inclusive, in the amount of $8,352,851.83, plus interest.[1]

The issue in the case is whether certain payments made by the plaintiff to its employees pursuant to a company bylaw passed in 1912 and paid proportionate to the employees' stockholdings in the company constitute compensation and are, therefore, deductible in arriving at taxable income. If the payments are considered compensation, they are deductible to the extent reasonable pursuant to section 23(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a) (1) (A). If the payments are not considered compensation, the question is whether the payments are otherwise ordinary and necessary expenses of the business. If not, they represent distributions of capital and are disallowable expenses in arriving at taxable income.

There is also the subsidiary question as to the nature of payments purportedly made pursuant to the above mentioned bylaw by plaintiff to the employees of a wholly owned subsidiary, the Glenn Tobacco Company. This will be discussed separately later in the opinion.

The Commissioner of Internal Revenue disallowed all of the above payments as deductions for tax purposes contending that they were preferential dividends. The defendant before this court reiterates the Commissioner's position contending that no part of the payents are deductible. Defendant argues that the purpose of the bylaw was to encourage

---

1. Subsequent to the filing of the suit with this court the plaintiff has conceded that $1,320,697.90 of previously claimed deductions are improper. The claim for re- fund is, therefore, altered to the extent that that amount would affect the overall tax liability.

the employees to acquire a proprietary interest in the company and thereby acquire voting control. Such a purpose, it contends, would necessarily defeat the alleged compensatory nature of the payments. Defendant also points to the historical treatment of the bylaw payments by the plaintiff on its books and tax returns as dividends as establishing that the payments are dividends and argues that on the basis of equitable estoppel it cannot now assert that the payments were compensatory in nature.

Plaintiff alleges that all sums of money paid pursuant to the bylaw, with the exception of certain sums now conceded by it to have been excessive, were compensation to the employees for services rendered. Plaintiff supports its contention by alleging that the purpose of the bylaw payment plan was to create incentive in the employees and to cause them to work harder for the company. The necessary result would be, it contends, that any amounts paid would be for services rendered, hence, deductible in arriving at taxable income.

Plaintiff also contends that payments made by it, allegedly pursuant to the bylaw, to the employees of its subsidiary are part of its cost of goods sold arguing that since the entire function of that subsidiary was to purchase foreign leaf tobaccos for it, any payments made to the employees of the company are a necessary element of the cost of the goods acquired by that company for the plaintiff.

The pertinent facts of the case may be stated as follows: On August 23, 1912, the plaintiff corporation passed a bylaw providing for a distribution of the company's annual profits in excess of a base figure computed at 22.19 percent of the outstanding common stock in an amount up to but not exceeding 10 percent of the profits in excess of such base figure. The distribution was to be to employees who had been in plaintiff's employ and held its stock for not less than 12 months with the distribution to be in proportion to the stockholdings of the employee. The bylaw was amended in 1915, the amendment permitting stock purchased from another officer or employee or from the personal representative of a deceased officer or employee to participate if the stock so purchased would have entitled the former owner to participate had it been held for the entire 12-month period. The bylaw was not substantially changed thereafter until 1949 and is the same bylaw that was in effect during the period in question, 1940 through 1948.[2] From 1912 through 1948 the plaintiff had an unbroken record of paying dividends on all of its outstanding stock. It likewise made distributions under the above bylaw every year through 1948, and thereafter, to the eligible employees.

Since 1922, when the Glenn Tobacco Company, a wholly owned subsidiary of plaintiff, was organized, the employees of that company who owned common stock of plaintiff have participated under the bylaw notwithstanding the fact that the bylaw makes no reference to them. The Glenn Company was engaged exclusively in the purchase of leaf tobacco in foreign countries for plaintiff and filed separate income tax returns. Plaintiff furnished it with all funds on open account to cover all the expenses and costs of acquiring foreign leaf tobaccos during the years in question.

It was plaintiff's intention when the bylaw profit distribution plan was set up in 1912 that it would provide its employees with a greater incentive, the feeling being that they would be more likely to take the company to heart if they owned stock in it.

As originally planned, the plaintiff wanted only those employees "who had the interest of the company at heart" to participate and did not want any one employee to acquire an excessive amount of stock in relation to his value to the company and the job performed. The plan was supervised by a company com-

2. For the substance of the changes in the bylaw by the 1949 amendment, see finding 71.

mittee with this in mind. It was the desire of plaintiff that the participating stock should not be acquired without company approval, but there was no corporate resolution concerning the manner or method under which acquisition could or would be made and no express directions to employees as to the amount of stock which they could acquire. The view of management that it should approve common stock acquisitions by employees was passed by word of mouth on an informal basis. Those employees could purchase the stock if they felt financially able and thereby share in subsequent distributions under the bylaw. Plaintiff's founder, R. J. Reynolds, in the early years of the plan, financed many purchases of the plaintiff's employees. Up until 1933, plaintiff itself extended substantial credit to its employees for the purchase of its stock; however, the loans by the company were restricted in amount to the book value of the stock and the stock was held as collateral. Until 1935, when Security Exchange Commission sanctions prohibited it, plaintiff bought its own stock for resale to its employees. The purchases were made from various sources, including nonemployee stockholders and officers or other employees upon their death or resignation.

Over the years, however, two imperfections developed in the plan. Some employees acquired too much stock and others did not acquire as much as was considered appropriate to the extent that their positions and records would have entitled them in the management's view. Employees sometimes acquired the eligible stock by gift, exchange, inheritance, purchase from other employees and holders of the stock, or purchase on the Stock Exchange, without advance notice to the company. Sometimes excessive stock ownership came about as a result of the company having encouraged ownership by an individual whose prospects of future value to the company were misjudged. However, no employees were ever discharged for acquiring too much stock. Plaintiff's management felt that these imperfections in the practical operation of their plan did not affect the overall success of the plan through the years and, in fact, credited the plan as being a large factor in the growth of the company from the smallest of the four principal tobacco companies in 1912 to the second largest and with a proportionate increase in size since 1912 greater than any of the other companies. During the period in question, 1940 through 1948, plaintiff had a higher ratio of earnings to sales and of earnings to equity than did the others.

Fixed salaries and hourly wages paid to plaintiff's employees on the levels below directors, officers, and junior officers, and other key employees, were at the going rate in the community. Salaried employees did not have fixed salaries larger than comparable positions in the next four or five largest companies in Winston-Salem, North Carolina, the location of plaintiff's plant, and in the view of the employees themselves, the salaries were in many cases lower. The fixed salaries paid by plaintiff to its buyers and salesmen were low in comparison to competitors'. These two groups were particularly encouraged to invest in the stock and the large majority of them did so and thereby increased their total income.

There was no evidence relating to the duties of the various individual officers and directors, or the responsibilities of each, or the amounts the individual officers and directors of the other companies received as compensation. There was no evidence introduced by plaintiff as to the reasonableness of the payments made to the other employees other than the testimony of four of the plaintiff's executives to the extent that they completely reviewed the records of all the participating employees for the years in question and determined that all bylaw payments to them were reasonable with the exception of certain sums conceded to have constituted unreasonable compensation for the services performed. In arriving at this determination of reasonableness, plaintiff's executives took in-

to consideration the employee's fixed salary and bylaw payments in relation to his ability, performance in the job, responsibility, length of service, and prospective value to the company. No evidence as to the total compensation paid to employees in like jobs in similar companies was introduced, and no such comparison was attempted. The defendant did not introduce any evidence tending to prove unreasonableness of the payments if considered compensation, nor did it attempt to refute the above testimony of reasonableness of the payments with the conceded exceptions. The defendant steadfastly maintained that the payments were preferential dividends.

There is little doubt that plaintiff's purchasing, sales, and management personnel were highly efficient, as studies by a competitor disclosed that plaintiff often bought its tobacco at the auction markets very close to the "floor" price,[3] and that plaintiff's cost of manufacturing cigarettes was from three to five cents lower per thousand than that of its competitors. Testimony by the former president of this competitor, the Brown & Williamson Tobacco Corporation, indicated that the fixed salaries paid to plaintiff's sales and purchasing personnel were low in comparison to other companies.

The refunds sought in this suit were initially requested on March 13, 1950, when plaintiff filed with the Commissioner of Internal Revenue claims for refund, those claims being filed only after a determination by the Deputy Commissioner of Internal Revenue, on December 28, 1949, pursuant to a written request by plaintiff, that payments made by it pursuant to its 1949 amended bylaw would constitute compensation for personal services rendered and, therefore, would be deductible to the extent reasonable. The above ruling, however, was revoked by letter to plaintiff on November 13, 1951, on the ground that the changes in

the bylaw effected by the 1949 amendment "were not material to the question presented." The claims for refund were thus denied on July 9, 1952, pursuant to the 1951 letter revoking the 1949 ruling.

The plaintiff claims refunds of income and excess-profits taxes for certain years which would result by the deduction from income of certain profit-sharing dividends paid to employees who owned shares of the corporation. The plaintiff contends that such dividends were, in effect, additional compensation to employees.

■ At the outset we must determine whether the sums paid under the bylaw are reasonable compensation or some sort of preferential dividend, for any payment made by an employer to its employees, to be deductible as compensation, must have been paid for services actually rendered. William S. Gray & Co. v. United States, 35 F.2d 968, 68 Ct. Cl. 480; Woodcliff Silk Mills v. Commissioner, 1 B.T.A. 715.

■ To determine whether the payments in the case at bar were compensation or dividends, we must look to the bylaw under which the payments were made, and its history, together with the section of the Internal Revenue Code of 1939 under which plaintiff claims relief.

The bylaw proposed by the board of directors and adopted on August 23, 1912, provided as follows:

"Participation by Officers and Employees in Certain Profits

"All of the Company's Officers and Employees who have owned its stock and been in its employ for not less than twelve months, may be allowed, in the discretion and at the option of the Board of Directors, beginning with the year 1912, to participate, in proportion to the stock thus owned, in the Company's Annual Profits which are in excess of

---

3. The "floor" price represents that price placed on the various grades of tobacco plus one cent. To illustrate, if the government grader has placed a price of 40 cents on a particular grade, unless that tobacco is bid in at 41 cents, it reverts to the Government pool and the Government pays the farmer.

the percentage of profits earned during the year 1910, to-wit: 22.19%, not exceeding, however, 10% of those profits, in excess of 22.19% of its entire outstanding issue of common stock, taking into account pro rata, any increase or decrease thereof, made during the year."

In 1915 the bylaw was amended as follows:

"Participation by Officers and Employees in Certain Profits

"All of the Company's officers and employees who have owned its Common Stock and been in its employ for not less than twelve months, then next preceeding may be allowed, in the discretion and at the option of the Board of Directors, beginning with the year 1912, to participate in proportion to the Common Stock thus owned, in the Company's annual profits which are in excess of the percentage of profits earned during the year 1910, to wit: 22.19%, not exceeding, however, 10% of those profits in excess of 22.19% of its entire outstanding issue of Common Stock, taking into account pro rata any increase or decrease thereof made during the year. The Common Stock owned by an officer or employee, for the purpose of this By-Law, beginning with the year 1916, shall include any stock purchased during the year from an officer or employee or from the personal representative of a deceased officer or employee, provided such stock would have entitled the former owner to participate in proportion thereto had it been held for the entire 12 months' period."

Thereafter, the bylaw remained in effect until it was again amended in 1949. It is for the period before the 1949 amendment that plaintiff here claims.

The profit-sharing plan was adopted by stockholders of the corporation in 1912. The purpose of the plan was obviously to encourage employees to become owners of a share of the business, and, by reason of such ownership, would have a greater interest in its profitable operations and would give their best efforts to this end. The plan provided that such employee owners would not only share equally with other stockholders in regular dividend distributions, but would receive special profit-sharing distributions from profits which would result from the greater interest of workers.

The basis of distribution of the profit-sharing dividends was pro rata to the number of shares held by all employees and in proportion to the number of shares held by each, without regard to the position held or services rendered. In order to construe such distributions as increased compensation for services rendered it must be found that the employee holding the greatest number of shares contributed the most valuable service, or that such employee was previously underpaid for the work he had performed, or that other employees who purchased no shares, contributed nothing to the increased profits from which such dividends were distributable. This has not been proved.

In plaintiff's plan, employment as well as investment by the employee was necessary before participation was possible. The defendant contends that this requirement of investment before participation affixes the label of dividends to payments under the bylaw. In other words, the payments came about as a result of the employee's investment and not because of services rendered. Thus, defendant argues that the payments in no way take on the character of compensation for services rendered so as to be deductible as ordinary and necessary business expense under section 23(a) (1) (A) of the 1939 Internal Revenue Code, which provides in part, as follows:

"*In General.* All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * *."

We agree with defendant's contention.

Bearing in mind that the bylaw adopted by plaintiff was prior to the enactment of the income tax laws, we cannot say that the plan was not designed to incite greater efforts on the part of its employees because of investment in the company. Further, we cannot say that the plan was designed for tax avoidance. However, conceding that the plan was designed for incentive purposes, the payments must have been reasonable compensation and not dividends in order to be deductible under section 23(a) (1) (A) of the Internal Revenue Code of 1939 because the two were mutually exclusive.

The payments are the very essence of dividends; i. e., distribution of the company's earnings made by the directors in their discretion and in direct proportion to stock holdings. Even if there were doubt as to whether the payments were dividends, the treatment of them by plaintiff should certainly remove it.

Historically, plaintiff treated the bylaw payments as dividends as is evidenced by the following facts of record: In tax matters generally the taxpayer treated the payments as dividends. In its return for 1940 to 1948, inclusive, the taxpayer never claimed the payments as deductions for any purposes; payments were not claimed or allowed for deductions in determining taxpayer's base in the years 1936 to 1939, inclusive, for excess-profits tax purposes; in computing its undistributed profits tax for 1936 to 1939 inclusive, taxpayer claimed that the payments were dividends and received substantial tax benefits thereby; taxpayer did not claim the payments as deductions in its State income tax returns; by and large the payments were shown as unallowable deductions or nondeductible items on the tax returns; the treatment of the items by taxpayer was approved by taxpayer's auditors as being in conformity with generally accepted accounting principles; in computing its social security and withholding taxes the payments were not treated by taxpayer as compensation; in 1942 taxpayer applied to the Commissioner for a ruling as to whether the payments should be treated as compensation in determining whether they could be properly made under salary stabilization laws and regulations, and stated that the payments had consistently been treated as dividends. The Commissioner so ruled; in filing forms 10–K with the Securities and Exchange Commission for the years 1946 to 1948 inclusive, plaintiff referred to the payments as dividends; plaintiff's retirement plans, adopted in 1929 and 1946, defined the terms "wage" and "compensation" so as to exclude bylaw payments for purposes of computing pensions; plaintiff's explanatory letter of August 8, 1912, stated that the payments were to be in proportion to stock *bona fide* owned by officers and employees of taxpayer; the payments were always in exact proportion to the common stock owned by the employee and were in addition to fixed compensation, regardless of the duties and responsibilities of the employee; plaintiff has admitted that under the plan large amounts sued for in the petition could not possibly be treated as reasonable compensation; fixed salaries and hourly wages to employees, below directors and officers were at the going rate in the community. When plaintiff gave across-the-board pay increases to hourly workers and supervisory personnel it did so without regard to stock ownership. The resolution of taxpayer's board for 1940 to 1945 referred to the payments as "participating dividends" ; in the case of Bookman v. R. J. Reynolds Tobacco Co., 138 N.J.Eq. 312, 48 A.2d 646, taxpayer in its answer alleged that the payments were dividends, and the court so held.

The taxpayer in order to recover is required to establish that it overpaid its taxes, which necessitates in this case a showing that the sums in question are deductible under section 23(a) (1) (A). Section 23(a) (1) (A) provides for allowance as deductions all of the ordinary and necessary expenses paid or incurred, "including a reasonable allowance for salaries or other compensation for personal services actually rendered; * *."

Section 29.23(a) (6), Treasury Regulation 111, governing the years 1942 to 1948, inclusive, provides that in order to be deductible as compensation or as ordinary and necessary business expense, the payments must not only be reasonable but be based purely on services rendered. Treasury Regulation 103, section 19.23 (a) (6), governing the years 1940 and 1941, are similar.

The evidence here discloses, and the Commissioner of this court has found, that the payments to employees were because of their investment in stock and not purely for services.

Since the payments were because of investment in stock and not purely for services, said payments would be dividends and not compensation. Twin City Tile & Marble Co. v. Commissioner, 6 B.T.A. 1238, affirmed 8 Cir., 32 F.2d 229.

It necessarily follows that were the payments not classified as compensation, they were clearly not business expenses.

The amounts paid by the corporation to its employees, having no substantial relation to the measure of their services and being utterly disproportionate to their value, are not in reality payment for services and cannot be regarded as "ordinary and necessary expenses" within the meaning of section 23(a) (1) (A), supra. Botany Worsted Mills v. United States, 278 U.S. 282, 292, 49 S.Ct. 129, 73 L.Ed. 379.

■ Assuming, *arguendo*, that the bylaw payments fell within the scope of section 23(a) (1) (A) of the 1939 Internal Revenue Code and were deductible as ordinary and necessary business expenses, the plaintiff would fail here for still another reason. To the extent that the payments represent unreasonable compensation for the services performed, they cannot be deducted by plaintiff for income tax purposes.

■ It is impossible, on the record before us, to determine just how much of the payments represents reasonable compensation or the number of shares of stock that were purchased without company approval and by whom. We can-

not make a determination of the amount of refund the plaintiff is entitled to without proof of these facts.

Plaintiff urges that the unrefuted testimony of its four executives to the effect that all of the payments, with certain designated exceptions, were reasonable compensation for the services performed by the various employees is sufficient to prove its case on the issue of reasonableness since the testimony was by men long acquainted with the tobacco industry, thus were experts, and since the testimony came only after a thorough analysis and study of the records of all the participating employees, and especially so since the integrity of these witnesses was not seriously questioned. The plaintiff notes that the defendant offered no testimony or documentary evidence to refute their testimony and, therefore, contends that it, the plaintiff, must be deemed to have proven its case and that the defendant failed in refuting such proof.

As hereinbefore noted, the above referred to witnesses testified that they reviewed the records of *all* participating emloyees, including officers and directors, and determined that except for certain specified amount, all payments made pursuant to the bylaw, when added to the fixed wages of the individual employees, did not exceed reasonable compensation for the services performed. In making this determination, the witnesses took into consideration the participating employee's ability, performance in the job, responsibility, length of service, and prospective individual value to the company.

The plaintiff in making its argument that this testimony proves its case as to reasonableness, notwithstanding the fact that it came from witnesses who were undoubtedly biased to some degree, cites several cases which seem in point and which caused the court considerable hesitancy before finally deciding that, while such testimony must be given some weight, especially since the witnesses were in no way impeached, it cannot be conclusive on the question of reasonable-

ness. We cannot consider it conclusive because the witnesses, in arriving at their conclusions, did not make an adequate comparison of the wage scales of comparable jobs in other companies of the tobacco industry.

■ Plaintiff further asserts that the reasonableness of the total compensation paid to the officer-director group was definitely proved because the total compensation paid the group compared favorably with that of plaintiff's three leading competitors and that there was testimony to this effect as well as written computations. The court, however, must disagree. The testimony and comparisons related only to the aggregate compensation of the group as compared to the aggregate compensation of a similar group of the other companies. There was no direct comparison with competitors by showing comparative duties and responsibilities of the individual officers or directors. The proof was based solely on a comparison of the total wages paid the officer-director groups of the respective companies in proportion to sales and earnings of those companies.

While such evidence may tend to prove that the total compensation of the officer-director group is not out of line with the total compensation paid to a like group by competitors, it is insufficient to prove the reasonableness of the compensation paid to any individual officer or director. Since there was no comparison of the duties or responsibilties of individuals doing like jobs, we must hold that the evidence is insufficient to prove the reasonableness of the total compensation received by the individual officers or directors of plaintiff. See L. Schepp Company v. Commissioner, 25 B.T.A. 419; Lydia E. Pinkham Medicine Co. v. Commissioner, 1 Cir., 128 F.2d 986, 145 A.L.R. 827, certiorari denied, 1942, 317 U.S. 675, 63 S.Ct. 80, 87 L.Ed. 542. The situation was adequately explained in the Schepp case, supra, 25 B.T.A. at pages 429–430, wherein the court stated as follows:

"* * * To test the salary deduction by ascertaining the ratio of the aggregate salaries to net earnings or gross sales would result in the recognition of a mathematical gross maximum and either the disregard within that figure of any relation between individual service and the compensation therefor, however plainly disproportionate, or else the consideration of the sum of all services and the relation of the whole to the gross salaries paid. This would practically nullify the clear statutory language and be at variance with the judicial tests laid down in the decisions above set forth. While it might superficially appear that the total paid to all four of petitioner's officers is small in comparison to its gross sales and net earnings, it does not appear that the amount credited to Florence Schepp is reasonable in comparison to her service. There is no evidence whatever of services and salaries actually performed and paid by and to other individuals in the same or comparable businesses, and no evidence of how much the company would have to pay to get someone else to do what Florence Schepp did."

The foregoing being so, we must hold that the plaintiff has not sufficiently proven its case on reasonableness, notwithstanding the fact that defendant has offered no evidence to refute that of the plaintiff's in this respect.

We think it would be proper to note at this time that we are not unmindful of the tax court decision in R. J. Reynolds Tobacco Company v. Commissioner, T.C. Memo 1956–161, decided July 6, 1956, in which that court decided that part of the bylaw payments for the years 1949 and 1950 were reasonable compensation and devised a formula to determine just what part of the payments represented reasonable compensation. However, the court in that case was deciding the nature of the payments made pursuant to a different bylaw, on a different record, and for different years than the ones in question here.

The tax court carefully pointed out in its opinion that the taxpayer prior to 1949 had a "shifting point of view," but that since then its attitude as to the nature of the distribution has been constant. The tax court then devised a formula from the record before it and permitted recovery by taxpayer. This court cannot, on the record before us, devise any formula such as the tax court has. We must look to the proof in this case, and we find a complete failure on the part of plaintiff in its proof of reasonableness.

The only remaining problem is whether payments made by plaintiff to the employees of its subsidiary, the Glenn Tobacco Company, are deductible as part of the cost of goods sold. We find no trouble in holding that no part of the amounts paid to the employees of Glenn are deductible either as compensation or as part of the cost of goods sold for the very simple reason that Glenn's employees were not qualified to receive anything under the bylaw which limited participation under the plan to the "Company's officers and employees who have owned its Common Stock and been in its employ for not less than twelve months, * * *." Plaintiff's board of directors was without authority to compensate another company's employees. We cannot hold that sums of money paid by a company's board of directors without authority are deductible for tax purposes on any theory.

It is therefore concluded that the payments made by plaintiff were preferential dividends and not compensation such as would be deductible under the Revenue Code of 1939, supra.

Plaintiff's petition is, therefore, dismissed.

MADDEN and LITTLETON, Judges, concur.

WHITAKER, Judge (concurring).

I agree that the payments to employees under the plan of the bylaw are not deductible as compensation for services rendered, because the payments were made in proportion to stock ownership and not in relation to the value of services rendered.

I would not decide the question of reasonableness.

JONES, Chief Judge, joins in the foregoing concurring opinion.