## Appeal of WOODCLIFF SILK MILLS.          Docket No. 559.

Amounts deducted by the affiliated corporations herein as officers' salaries for the year 1918, *held* to have been reasonable compensation for personal services actually rendered during that year.

Submitted January 8, 1925; decided March 9, 1925.

*Mark Eisner, Esq.*, for the taxpayer.

*Willis D. Nance, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This is an appeal from a determination of the Commissioner disallowing certain salaries to its officers deducted by the taxpayer in its return for 1918 and upon which it is proposed to assess an additional tax. From the testimony adduced at the hearing the board makes the following

### FINDINGS OF FACT.

The taxpayer is a New Jersey corporation, and prior to 1918 all of its activities were conducted as one corporation. At the end of 1917 the corporation was reorganized into three separate corporations, known as Woodcliff Silk Mills, Weatherby Realty Co., and

Valentine, Bunker & DeBar.  The Woodcliff Silk Mills was the manufacturing corporation and purchased raw materials which it manufactured into silk.  The Weatherby Realty Co. owned lands, buildings, and machinery, which it leased to the Woodcliff Silk Mills; and Valentine, Bunker & DeBar was a selling corporation which sold the products of the Woodcliff Silk Mills.  The officers and stockholders of the three corporations were identical, held the same proportion of the stock of each corporation, were actively engaged in the operation thereof and devoted all their time to the business.

At the time of reorganization in 1917 the relative value of the services of each of the several officers and stockholders to the respective corporations was determined, and they were permitted to acquire stock of each corporation in accordance with such determined relative value.  In accordance with such determination, the stock of the three corporations was distributed as follows:

|  | Woodcliff Silk Mills | Weatherby Realty Co. | Valentine, Bunker & DeBar |
|---|---|---|---|
| David Valentine | 250 | 150 | 148 |
| Dumont Bunker | 250 | 150 | 148 |
| William LeBert DeBar | 300 | 180 | 178 |
| Joseph LeBert DeBar | 100 | 60 | 60 |
| Amel Mattern | 100 | 60 | 58 |
| Total | 1, 000 | 600 | 592 |

Coincident with the fixing of the stockholdings of the several stockholders a resolution was passed by the board of directors of each company fixing the salaries of its respective officers for the year 1918.  The directors of the Woodcliff Silk Mills voted as salaries to its officers for the ensuing year the sum of $24,000, and the directors of the Weatherby Realty Co. voted the sum of $8,000 for the same purpose.  The directors of Valentine, Bunker & DeBar voted 6 per cent of its net sales for officers' salaries by a resolution as follows:

*Resolved,* That until the further action of this board the officers of this corporation receive compensation as follows:

The president and vice-president shall each receive a sum equal to one and one-half per cent (1½%) of the net sales of the corporation, the same to be paid on or before the 15th day of each calendar month in respect to the sales of the preceding month.

The treasurer shall receive a sum equal to two per cent (2%) of the net sales of the corporation, which compensation shall be paid at the end of each calendar year in respect to the sales of said year, except that the treasurer shall receive the sum of two hundred and fifty dollars ($250) per month, payable monthly, which monthly payments shall be charged against his said commissions, but he shall receive and retain the same even though the entire sales in any year shall be less than $150,000.

The secretary and assistant treasurer shall each receive a sum equal to one-half of one per cent (½%) of the net sales of the corporation, which sums shall be paid to them at the end of each calendar year in respect to the sales for said year.

In addition, the president and vice-president shall each receive the sum of two thousand five hundred dollars ($2,500) a year, payable in equal monthly installments by way of reimbursement for rent, office and traveling expenses

incurred and for special services rendered by them in the conduct of the business of the corporation and not otherwise charged.

PROVIDED, HOWEVER, That each of said officers shall without further compensation perform such duties as may be assigned to them respectively by the board of directors.

In each case the amount voted for salaries of officers was divided among the several officers in proportion to their stockholdings, as determined at the time of reorganization, and the total amount thereof was deducted in the consolidated return of the three corporations for the year 1918.

The Commissioner has allowed as salaries all of the amounts so fixed except the sum of $32,000, and has denied that amount on the grounds (1) that it was not salary but a distribution of profits, and (2) that if it was paid as salary, such salaries were unreasonable in amount.

### DECISION.

The determination of the Commissioner is disapproved and the amount of the salaries determined by the directors of the respective corporations should be allowed as a deduction in computing the consolidated net income for the year 1918. The amount of the deficiency to be assessed will be settled by the board on consent or on 10 days' notice under rule 50.

### OPINION.

MARQUETTE: The Commissioner has disallowed as deductions in computing the net income of the affiliated corporations for the year 1918 the sum of $32,000 in officers' salaries upon the grounds (1) that it does not constitute salaries but is an attempt to distribute profits under the guise of salaries, and (2) if said amount does constitute salaries, such salaries are unreasonable.

The facts disclose that prior to the year in question, and at the time of reorganization in 1917, the amount of stock each officer should hold was determined by ascertaining the value of his services to the corporation; that at the same time resolutions were passed fixing the amount of salaries officers should receive, and these salaries were in proportion to the stockholdings of the respective officers. It is apparent that the salary deductions disallowed were those voted by the directors of the Woodcliff Silk Mills in the amount of $24,000, and the Weatherby Realty Co. of $8,000, while that voted by Valentine, Bunker & DeBar upon a percentage of net sales was allowed.

The testimony shows that the officers of these corporations had been engaged in the silk business for from 10 to 40 years; that they rendered services to these corporations during the year in question; and that they devoted their entire time to the business.

The first ground for disallowance has as a basis the contention that, as the amounts voted by the directors of the respective corporations were divided among the officers in direct proportion to their stockholdings, they were in reality a distribution of profits under the guise of salaries, and thus were not salaries but dividends.

The revenue act of 1918 provides for the deduction of salaries as follows:

SEC. 234. (a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered,   *   *   *

To become an allowable deduction under the statute the salary or compensation paid must have been for personal services actually rendered and must further have been reasonable in amount. Whether amounts paid constitute compensation for personal services actually rendered or are an attempt to distribute profits as salaries is, in the last analysis, a question of fact to be determined from all the evidence. *United States* v. *Philadelphia Knitting Mills Co.*, 273 Fed. 657. The fact that salaries paid to its officers by a corporation are in direct proportion to the stockholdings of the respec-' tive officers is strong evidence of an intent to distribute profits as salaries and must be overcome by clear evidence showing that the salaries are reasonable in amount and actually represent compensation for personal services rendered. In every case where the compensation paid is in direct proportion to stockholdings, the evidence adduced will be carefully examined and if, from the surrounding facts and circumstances, it appears that the salaries are unreasonable in amount or do not in fact represent compensation for personal services actually rendered, they will be disallowed as a deduction from gross income.

The amount of compensation which a corporation shall pay its officers for their personal service is, in the first instance, a matter within the judgment and discretion of its board of directors, and the only limitation upon the deduction of such amount for income tax purposes is that the amount must be reasonable. In the instant case it was determined at the time of reorganization in 1917 that the stockholdings of its respective officers should be in proportion to the value of their services to the corporations, and that the compensation to be paid for such services should be in the same proportion. We find nothing in this which leads us to the conclusion that there was an attempt to distribute profits as salaries but, on the other hand, we think it shows an appraisement of the value of the services of the respective officers, and under the statute amounts paid or incurred therefor are properly deductible unless we can find that the amount thereof was unreasonable.

The testimony presented showed that all of the officers of the respective corporations devoted their entire time to the affairs of the several corporations and were men of long experience in the silk business. The principal officers had been engaged in the manufacture and sale of silk from 25 to 40 years and were expert in their respective branches of the business. It further appears that some qf them had been offered salaries higher than those paid by the corporations herein, and the testimony of witnesses familiar with the silk business shows that the salaries paid were not in excess of those paid for similar services by concerns doing a like business.

From all the evidence we are of opinion that the amount voted as salaries represented reasonable compensation for personal services

actually rendered by the respective officers and that it must be allowed as a deduction in ascertaining the net income for the year 1918.