Penn Perry Roofing, Inc. v. Commissioner.
Penn Perry Roofing, Co. v. Commissioner
Docket No. 93773.
United States Tax Court
T.C. Memo 1965-51; 1965 Tax Ct. Memo LEXIS 279; 24 T.C.M. (CCH) 287; T.C.M. (RIA) 65051; March 9, 1965
*279 Robert G. MacAlister, 3320 Grant Bldg., Pittsburgh, Pa., Frank E. Coho, Stanley M. Simon, and Marshall J. Conn, for the petitioner. Gary L. Stansberry, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined deficiencies in the income tax of petitioner for the fiscal years ended May 31, 1958, 1959, and 1960 in the respective amounts of $4,336.77, $3,090, and $3,363.62. The issues presented by the pleadings are (1) whether the respondent has erred in treating the amounts of $10,000, $9,750, and $15,225, representing portions of the deductions taken by petitioner for the taxable years 1958, 1959, and 1960, respectively, as compensation payments to employees, as amounts paid such employees other than as compensation for services actually rendered by them, and (2) whether the respondent in determining allowable deductions for depreciation has erred in reducing for the taxable years 1958 and 1959 the cost basis of certain depreciable business asserts by a reasonable salvage value. At the hearing as well as on brief the respondent, as to issue No. (1) conceded error in disallowing the entire $15,225 taken by petitioner *280 for 1960 and conceded that one-half of that amount, $7,612.50, was properly deductible as compensation expense. As to the remainder of the $15,225, $7,612.50, and the disallowed portions of the deductions taken for 1958 and 1959, namely, $10,000 and $9,750, respectively, the respondent conceded such amounts would not constitute excessive compensation if actually paid by petitioner as compensation for services rendered. As to issue No. (2) the petitioner concedes on brief that since it failed to present any evidence relative thereto it is liable for the portions of the deficiencies involved in that issue. In view of the foregoing concessions of the parties the sole question remaining for determination is whether the above-mentioned amounts of $10,000, $9,750, and $7,612.50 deducted by petitioner for the taxable years 1958, 1959, and 1960, respectively, were paid by petitioner as compensation for services rendered, rather than as treated by respondent amounts paid other than as compensation for services rendered. Findings of Fact The facts which have been agreed upon by the parties are found as stipulated. The petitioner is a Pennsylvania corporation organized in June 1957 and *281 has its principal place of business in Pittsburgh, Pennsylvania. Petitioner filed its Federal income tax returns for the taxable years ended May 31, 1958, 1959, and 1960 with the district director of internal revenue in Pittsburgh, Pennsylvania. Respondent disallowed the following amounts paid to the following stockholder-employees of petitioner for the years 1958, 1959, and 1960 and deducted by petitioner as compensation for services. Amount
Name
1958
1959
1960
Elliott, Norman W.
$ 4,877.30
$4,755.35
$3,713.11
Maxwell, W.A.
2,058.10
2,006.64
1,567.02
Trubic, John W.
278.60
271.64
212.04
Dailey, Donald
278.60
271.64
212.04
Maxwell, Franklin
278.60
271.64
212.04
Todd, Mercer
696.50
679.09
530.01
Wiggins, Clair
1,393.00
1,358.18
1,060.22
Staps, William
69.65
67.91
53.01
Schorr, Warren
69.65
67.91
53.01
Total
$10,000.00
$9,750.00
$7,612.50
Petitioner's stockholders, number of shares held by each stockholder, and par value thereof as of May 31, 1958, 1959, and 1960 were as follows: Class "A" Common
Name
Shares
Value
Elliott, Norman W.
26
$ 520
Maxwell, W. A.
24
480
Total
50
1,000
Class "B" Common
Elliott, Norman W.
345
$34,500
Maxwell, W. A.
143
14,300
Wiggins, Clair L.
100
10,000
Todd, Mercer
50
5,000
Dailey, Donald [1]
20
2,000
Maxwell, Franklin
20
2,000
Trubic, John W.
20
2,000
Schorr, Warren
5
500
Staps, William
5
500
Total
708
$70,800
*282 Prior to the years at issue the aboveenumerated stockholders of petitioner had been employed in Pittsburgh, Pennsylvania, by Limbach Company, a large business concern there operating a roofing division. Limbach discontinued its roofing business in Pittsburgh prior to 1958 leaving the named stockholders of petitioner without employment. Elliott determined to remain in the roofing business in the same area and to that end organized petitioner. Upon organization of petitioner he became its president and has continued as such. W. A. Maxwell became vice president and has continued as such. Elliott and the other stockholders of petitioner had become particularly skilled in the management, supervision, and operation of a roofing business while employed by Limbach and Elliott interested the others in obtaining stock interests *283 in petitioner. Elliott determined the proportion of stock to be made available for purchase by each based upon his estimation of the value of each to the new enterprise and, with a few exceptions, each purchased the stock allocated to him and thereafter became employed by petitioner in the same or nearly the same managerial and supervisory capacity as he had occupied with Limbach. Many of these people were under pressure from petitioner's competitors to accept employment with such competitors. To offset such pressure petitioner paid the stockholders bonuses during each year at issue over and above their base wages. The base wages were at the union scale and were insufficient in amount to adequately compensate them for their services rendered to petitioner. The base wage, plus the bonus paid to each, was not excessive in amount as compensation for such services. As principal officer of the petitioner, Elliott made all determinations of bonuses and other compensation. The amount of bonus paid to each of the stockholders was determined by him at or near the close of each taxable year at issue at a time when the approximate amount of the annual earnings of petitioner had been determined. *284 In fixing the amount of such bonuses Elliott first determined what portion of the petitioner's earnings should be retained for working capital and the portion that would be available for bonuses. After having ascertained the portion of the earnings which he considered available for bonuses he generally made a "50-50 split" thereof and allocated one spilt portion to be paid as bonuses to field employees and certain of the management employees and the other portion he allocated for payment as bonuses to key personnel and certain other management employees. Having thus made such allocations he then considered with respect to each employee (whether a stockholder or not) what his work performance had been, his worth to petitioner's business, and what amount would be necessary, in view of offers of employment by competitors, to retain him in petitioner's employ. Thereupon Elliott made a list on scratch paper of the names of petitioner's employees, setting opposite each name in round numbers an amount tentatively determined by him to be paid to such employee as a bonus. He then gave the list to the business manager of petitioner, John Trubic, with instructions to determine, within the range *285 of the round amounts, a specific amount of the bonus to be paid each employee, with the total of such specific amounts not to exceed the amount of the petitioner's annual earnings previously allocated by Elliott for the payment of bonuses. Trubic then prepared and submitted to Elliott a list showing the name of each employee and an amount in dollars and cents which was within the range of the round amount Elliott previously had tentatively determined as bonus for the employee. Elliott examined the list and found that the dollar and cents amount suggested by Trubic for each employee was within range of the round amount previously tentatively determined by him (Elliott) for the employee and that the total for all employees did not exceed the amount of petitioner's earnings which he (Elliott) previously had allocated for the payment of bonuses. Having so found, Elliott authorized and petitioner paid to the employees bonuses of the specific amounts shown on the list, including the amounts here in controversy. The petitioner did not in the years in issue or at any other time formally declare a cash dividend. Its books and records record the payments in controversy as compensation for *286 services rendered. The total amounts paid petitioner's stockholder-employees above enumerated for each year at issue over their base wage were not determined and paid in accordance with or in proportion to the stock ownership of the payees. Such amounts were paid by petitioner as compensation for services actually tendered to it by the recipients. Opinion The single narrow question before us for determination here is whether the amounts of $10,000, $9,750, and $7,612.50 deducted by petitioner for the taxable years 1958, 1959, and 1960, respectively, as compensation paid stockholder-employees were paid by petitioner as bonus compensation for services rendered as petitioner contends or as dividends as respondent contends. The parties are in agreement and properly so that the question is one of fact to be determined from a consideration of all the evidence presented. Twin City Tile & Marble Co, 6 B.T.A. 1238 (1927), affd. 32 F. 2d 229 (C.A. 8, 1929); Woodcliff Silk Mills, 1 B.T.A. 715 (1925). The only evidence which would tend to substantiate respondent's contention is certain entries in work sheets made by Trubic at or about the time he *287 prepared and submitted to Elliott a list showing the name of each employee of petitioner and an amount in dollars and cents which was within the range of the round amount Elliott previously had tentatively determined as bonus for the employee. The record shows that the entries relied on by respondent were made by Trubic for personal reasons only and not because of any instruction of Elliott, individually, or in behalf of petitioner and merely represented Trubic's opinion of the amounts of petitioner's earnings which might be considered as earnings on employee investments in the outstanding stock of petitioner. Since Elliott as principal officer of petitioner made all determinations of bonuses and other compensation, since he as such officer initially tentatively dedetermined the round amounts as bonuses, based not on stockholdings of stockholder-employees but on a consideration of employee work performance, employee worth to petitioner's business and the amount that would be necessary, in view of offers of employment by competitors, to retain the employee in the employ of petitioner, and since Elliott approved and authorized payment as bonus of the specific dollar and cents amounts *288 which were within the range of the round amounts tentatively determined by him as bonus, we think his acts and determinations rather than mere unauthorized entries and computations made only for personal reasons by Trubic are to be regarded as determinative of the question as to whether the payments made by petitioner and here in controversy were made as bonuses or as dividends. Accordingly from an over-all consideration of the record we have concluded and found as a fact that the payments in controversy herein were made by petitioner as compensation for services actually rendered to it by the recipients. Since the respondent has conceded that such payments would not be excessive compensation if actually paid by petitioner as compensation for services rendered, we hold that the payments constituted allowable deductions to petitioner. To give effect to the petitioner's concession as to issue No. (2). Decision will be entered under Rule 50. Footnotes
1. On May 6, 1960, Donald Dailey sold to petitioner his 20 shares owned therein. This resulted in a reduction from 708 to 688 in the total number of shares of petitioner's Class "B" common stock outstanding on May 31, 1960, and resulted in a reduction from $70,800 to $68,800 in the total value of petitioner's Class "B" common stock outstanding on May 31, 1960.↩